ORIGINAL

FILED

BY COURT SEALED ORDER

**JSW**

FILE BY FAX

1   KENNETH J. NOLAN, Esq. (SBN 603406)
    MARCELLA AUERBACH, Esq. (SBN 249335)
2   NOLAN & AUERBACH, P.A.
    435 N. Andrews Ave., Suite 401
3   Fort Lauderdale, FL 33301
    (954) 779-3943
4   (954) 779-3937 (fax)

5   MATTHEW B. PAVONE, Esq. (SBN 94965)
    LAW OFFICES OF MATTHEW B. PAVONE
6   Courtyard Square
    750 Grant Avenue, Suite 250
7   Novato, CA 94945
    (415) 209-9610
8   (415) 892-0337 (fax)

9   Attorneys for Plaintiff Marc Andreozzi

10

          **IN THE UNITED STATES DISTRICT COURT**
11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                 **SAN FRANCISCO DIVISION**

12                                                              1921

13  UNITED STATES OF AMERICA; and          )  CV  09  Civil Action No._____
    THE STATES OF CALIFORNIA,              )
    DELAWARE, FLORIDA, GEORGIA,            )
14  HAWAII, ILLINOIS, INDIANA, LOUISIANA,  )  **FALSE CLAIMS ACT**
    MICHIGAN, MONTANA, NEVADA              )  **COMPLAINT**
15  NEW HAMPSHIRE, NEW JERSEY,             )
    NEW MEXICO, NEW YORK, OKLAHOMA         )  FILED UNDER SEAL
16  RHODE ISLAND, TENNESSEE, TEXAS,        )  PURSUANT TO
    and WISCONSIN, THE COMMONWEALTHS OF )    31 U.S.C. § 3730(b)(2)
17  MASSACHUSETTS and VIRGINIA; and        )
    THE DISTRICT OF COLUMBIA;              )
18  ex rel. MARC ANDREOZZI                 )
                  Plaintiffs               )
19  v.                                     )
                                           )
20  ELI LILLY AND COMPANY                  )
                                           )
21         Defendant.                      )
                                           /
22

23              **FALSE CLAIMS ACT COMPLAINT**

24  **INTRODUCTION**

25      1.      Marc Andreozzi ("Relator") brings this action on behalf of the United States of

26  America against Eli Lilly and Company (hereinafter referred to as "Lilly" or "Defendant") for treble

27  damages and civil penalties arising from Lilly's conduct in violation of the Federal Civil False

28  Claims Act, 31 U.S.C. § 3729, et seq. ("FCA").

                                          1

1    2.    This action is also brought under the respective qui tam provisions of False Claims
2  Acts (or similarly named) on behalf of the of the States of California, Delaware, Florida, Georgia,
3  Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Hampshire, New Jersey, New
4  Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, Wisconsin, the District of
5  Columbia, the Commonwealths of Massachusetts and Virginia. These states, together with the
6  United States, are hereafter collectively referred to as the Government.

7    3.    The violations arise out of requests for payment by Medicare, Medicaid, TRICARE,
8  and other federally-funded government healthcare programs (hereinafter referred to as "Government
9  Healthcare Programs").

10    4.    This Complaint describes a systematic course of conduct by Lilly to unlawfully
11  promote the prescription drug Cymbalta off-label for chronic pain (to include any and all knee pain,
12  shoulder pain, lower back pain, or any other type of sustained pain anywhere on the human body).

13    5.    Cymbalta is now Lilly's best-selling U.S. product, overtaking antipsychotic Zyprexa
14  (olanzapine) during the first quarter of 2008. In first quarter 2009, Lilly reported sales of Cymbalta
15  increased 17 percent, to $597.1 million.

16    6.    Over the years, Lilly has boasted of its strict purported adherence to strict ethical
17  standards and guidelines. Lilly provided an ethical code to its sales force which was set forth in,
18  among other places, the "Red Book." According to the Lilly's website, the Red Book is a
19  "comprehensive code of ethical and legal business conduct applicable to all employees. " The Red
20  Book contains a section entitled, "Ethical Interactions with Health Care Providers and the Promotion
21  a/Pharmaceutical Products" wherein it states, in relevant part:

22          Employees must comply with all laws, regulations, industry codes of
            practice, company policies, and government and court orders and
23          decrees that govern the promotion of Lilly medicines and medical
            devices. Employees must also behave ethically in dealings with health
24          care providers.

25    7.    Within the same section of the Red Book, Lilly outlines in relevant part, that
26  employees involved in sales and marketing activities must (among other things):

27          (a)    "Promote Lilly products only for their locally approved indications" and
            (b)    "Not proactively discuss information about unapproved new products or off-
28                 label information."

**FALSE CLAIMS ACT COMPLAINT**

8.      Despite this purported high ethical standards, Lilly has undergone multiple investigations and has settled for large sums of money and criminal penalties, due to allegations of off-label promotion and/or related conduct. They include, in 2005, Lilly settled a federal investigation and pleaded guilty to claims it promoted its bone loss drug, Evista, for off-label use. Lilly paid a total of $36 million in disgorged profits and fines. In January 2009, Lilly agreed to plead guilty and pay $1.415 billion for promoting its drug Zyprexa for uses not approved by the Food and Drug Administration The resolution included a criminal fine of $515 million, the largest ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind. Lilly also agreed to pay up to   $800 million in a civil settlement with the federal government and the states.

## INFORMATION ABOUT THE RELATOR

9.      Relator, Marc Andreozzi, is a resident of Florida.  He was employed by Lilly as a Neuroscience Sales Specialist from approximately April 2006 until November 2008.

10.     Relator brings this action based on his direct knowledge and also on information and belief. None of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4). Notwithstanding same, Relator is an original source of the facts alleged in this Complaint.

11.     Relator is informed and believes that the pervasive kickbacks and false claims described herein began are ongoing and dates back at least five years.

12.     Relator was hired by Lilly to market 4 drugs, one of which was Cymbalta. He was trained by Lilly on methods to market Cymbalta off-label during sales calls with physicians; trained by Lilly about evasive conversational tactics to deflect appropriate questions about Cymbalta's lack of FDA-approved indication for chronic pain, was given articles and studies and other materials to justify Cymbalta's off-label marketing message; and was trained by Lilly to identify and seek out physicians who could be solicited to accept inducements in exchange for writing large volumes of Cymbalta. Relator is personally aware that these same tactics were provided by Lilly on a national basis throughout its salesforce when selling and detailing Cymbalta.

**FALSE CLAIMS ACT COMPLAINT**

1       13.     Relator has personal knowledge of Lilly's corporate endorsement of this unlawful
2 national off-label Cymbalta marketing scheme for the chronic pain market and also has personal
3 knowledge of the specific Lilly corporate personnel responsible for implementing Cymbalta's
4 off-label marketing.

5       14.     Each District within Lilly was typically made up of a population of a mid-size city,
6 and typically Lilly employed one Manager and 12-14 representatives within each District to call on
7 physicians to prescribe Cymbalta.

8       15.     Relator's territory was the Florida Tallahassee District. Lilly stationed its specialty
9 reps in every state. Lilly recognized that certain states were "most important," and recognized Florida
10 and California, for instance to be "heavyweight" states, to which Lilly assigned relatively large sales
11 forces. Both were known to have high Medicare and Medicaid populations.

12      16.     Lilly organized its Cymbalta sales operations into regional divisions, headed by
13 Enrique Conterno, V.P. of Sales (now President, Lilly USA). The State of Florida fell within Lilly's
14 East division, headed by Greg Beeman, V.P. Neuroscience Sales. Lilly further divided the marketing
15 territories into areas, and then subdivided further into districts.

16 **INFORMATION ABOUT LILLY**

17      17.     Defendant Lilly is a pharmaceutical company engaged in the development,
18 manufacturing and marketing of pharmaceutical products. Its headquarters are located in
19 Indianapolis, Indiana, it is an Indiana corporation, and it does business throughout the United States.

20      18.     At all times relevant hereto, Lilly acted through its agents and employees, and the acts
21 of Lilly's agents and employees were within the scope of their agency and employment. The policies
22 and practices alleged in this complaint were, on information and belief, established and/or ratified
23 at the highest corporate levels of Lilly.

24 **FEDERAL JURISDICTION AND VENUE**

25      19.     The acts proscribed by 31 U.S.C. §3729 *et seq.* and complained of herein occurred
26 in part in the Northern District of California, and Lilly does business in the Northern District of
27 California. Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. 3732 (a), as
28 well as under 28 U.S.C. § 1345. This Court has jurisdiction over this case for the claims brought

1 on behalf of the states (referenced in paragraph 2) pursuant to 31 U.S.C. §3732(b), inasmuch as
2 recovery is sought on behalf of said states which arises from the same transactions and occurrences
3 as the claim brought on behalf of the United States.

4     20.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because Lilly
5 transacts business in this District.

6 **THE REGULATORY ENVIRONMENT**

7 **The FDCA**

8     21.    The United States Food, Drug and Cosmetic Act (FDCA) establishes the framework
9 for regulation of, inter alia, the sales and marketing activities of pharmaceutical manufacturers in the
10 United States, including the introduction of new drugs into interstate commerce. When the United
11 States Food and Drug Administration ("FDA") approves a drug, it approves the drug only for the
12 particular use for which it was tested.

13     22.    While a physician may prescribe a drug for a use other than one for which it is
14 approved, the FDCA prohibits a drug manufacturer from marketing or promoting a drug for
15 non-approved uses. 21 U.S.C. § 331(d), 355(a). It therefore is illegal for a drug manufacturer and
16 its sales representatives to initiate discussions with medical professionals regarding any off-label use
17 of the drug.

18     23.    The dissemination of information or materials by a pharmaceutical manufacturer of
19 any unapproved or off-label use, also known as "misbranding," constitutes unlawful promotional
20 advertising of the drug, violates the FDCA, and can also serve as the basis for an FCA violation.

21     24.    In addition to prohibiting manufacturers from directly marketing and promoting a
22 product's unapproved use, Congress and the FDA have acted to prevent manufacturers from
23 employing indirect methods to accomplish the same end. For example, the FDA regulates two of
24 the most prevalent indirect promotional strategies: (A) manufacturer dissemination of medical and
25 scientific publications concerning the off-label uses of their products; and (B) manufacturer support
26 for Continuing Medical Education ("CME") programs and "speaker" programs, that focus on
27 off-label uses.

28     25.    With regard to the first practice—disseminating written information—the FDCA

5

**FALSE CLAIMS ACT COMPLAINT**

1  allows a manufacturer to disseminate information regarding off-label usage only in response to an
2  "unsolicited request from a health care practitioner." 21 U.S.C. §360aaa-6 (emphasis added). In any
3  other circumstance, a manufacturer is permitted to disseminate information concerning the off-label
4  uses of a drug only after the manufacturer has submitted an application to the FDA seeking approval
5  of the drug for the off-label use; and has provided the materials to the FDA prior to dissemination.
6  The materials must be submitted in an unabridged form and must not be false or misleading. 21
7  U.S.C. §§ 360aaa(b) & (c);360aaa-1.

8      26.    The promotion of an off-label use for a prescription drug can interfere with the proper
9  treatment of a patient. Off-label promotion can lull a physician into believing that the drug being
10 promoted is safe and effective for the intended off-label use, and that the FDA has approved the drug
11 for that use. Thus, off-label promotion can cause a doctor and patient to forgo treatment with an
12 FDA-approved drug that has been proven to be safe and effective, and instead to substitute a
13 treatment urged by the sales representative that is not known to be safe and effective, and that may
14 in fact be harmful.

15                          **Anti-Kickback Act**

16     27.    Pursuant to the Anti-Kickback Act, 42 U.S.C. Section 1320a-7b(b), it is unlawful to
17 knowingly offer or pay any remuneration in cash or in kind in exchange for the referral of any
18 product (including a prescription drug product) for which payment is sought from any
19 federally-funded health care program, including Medicare, Medicaid, and TRICARE.

20     28.    The Anti-Kickback Act is designed to, inter alia, ensure that patient care will not be
21 improperly influenced by inappropriate compensation from the pharmaceutical industry.

22     29.    Every federally-funded health care program requires every provider or supplier to
23 ensure compliance with the provisions of the Anti-Kickback Act and other federal laws governing
24 the provision of health care services in the United States.

25     30.    The Anti-Kickback Act prohibits suppliers such as pharmaceutical manufacturers
26 from compensating, in cash or in kind, a health care provider when a purpose of the payment is to
27 influence the provider's prescribing habits or to gain favor for its product over the product of any
28 competitor.

1

**False Claims Act**

2      31.     The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was
3  originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments
4  Act, Pub.L. 99-562, 100 Stat. 3153.  Congress enacted the 1986 amendments to enhance and
5  modernize the Government's tools for recovering losses sustained by frauds against it after finding
6  that federal program fraud was pervasive.  The amendments were intended to create incentives for
7  individuals with knowledge of Government frauds to disclose the information without fear of
8  reprisals or Government inaction, and to encourage the private bar to commit resources to
9  prosecuting fraud on the Government's behalf.

10      32.     The FCA provides that any person who knowingly presents, or causes to be presented,
11  false or fraudulent claims for payment or approval to the United States Government, or knowingly
12  makes, uses, or causes to be made or used false records and statements to induce the Government
13  to pay or approve false and fraudulent claims, is liable for a civil penalty ranging from $5,500 up to
14  $11,000 for each such claim, plus three times the amount of the damages sustained by the federal
15  Government.

16      33.     The FCA allows any person having information about false or fraudulent claims to
17  bring an action for himself and the Government, and to share in any recovery. The FCA requires that
18  the complaint be filed under seal for a minimum of 60 days (without service on the Defendants
19  during that time).  Based on these provisions, qui tam plaintiff/relator seeks through this action to
20  recover all available damages, civil penalties, and other relief for state and federal violations alleged
21  herein.

22      34.     The FCA provides, in pertinent part that:

23          (a) Any person who (1) knowingly presents, or causes to be
             presented, to an officer or employee of the United States Government
24          or a member of the Armed Forces of the United States a false or
             fraudulent claim for payment or approval; (2) knowingly makes, uses,
25          or causes to be made or used, a false record or statement to get a false
             or fraudulent claim paid or approved by the Government; (3)
26          conspires to defraud the Government by getting a false or fraudulent
             claim paid or approved by the Government;
27                                  * * *
             is liable to the United States Government for a civil penalty of not
28          less than $5,000 and not more than $10,000, plus 3 times the amount

7

**FALSE CLAIMS ACT COMPLAINT**

1

of damages which the Government sustains because of the act of that person.

2

31 U.S.C. § 3729.

3

## FEDERAL HEALTHCARE PROGRAMS

4

5    35.    Federally-funded healthcare programs ("Government Healthcare Programs") cover

6    prescription drugs. The programs include but are not limited to the following three programs.

7    36.    Medicare is a government financial health insurance program administered by the

8    Social Security Administration of the United States. Medicare was promulgated to provide payment

9    for medical services, durable medical equipment and other related health items for individuals 65

10   and over. Medicare also makes payment for certain health services provided to additional classes of

11   needy classes of individual healthcare patients pursuant to federal regulation.

12   37.    The federal government enacted the Medicaid program in 1965 as a cooperative

13   undertaking between the federal and state governments to help the states provide health care to

14   low-income individuals. The Medicaid program pays for services pursuant to plans developed by

15   the states and approved by the U.S. Department of Health and Human Services ("HHS") Secretary

16   through CMS. See 42 U.S.C. §§1396a(a)-(b). States pay doctors, hospitals, pharmacies, and other

17   providers and suppliers of medical items and services according to established rates. See 42 U.S.C.

18   §§1396b(a)(1), 1903(a)(1). The federal government then pays each state a statutorily established

19   share of "the total amount expended ... as medical assistance under the State plan ..." See 42 U.S.C.

20   §1396b(a)(1). This federal-to-state payment is known as federal financial participation ("FFP").

21   38.    TRICARE is the component agency of the U.S. Department of Defense that

22   administers and supervises the health care program for certain military personnel and their

23   dependents. TRICARE contracts with a fiscal intermediary that receives, adjudicates, processes and

24   pays health care claims submitted to it by TRICARE beneficiaries or providers. The funds used to

25   pay the TRICARE claims are federal government funds.

26   ## CYMBALTA FDA APPROVAL AND REGULATORY ACTION

27   39.    On November 12, 2001, Defendant Lilly submitted an NDA seeking approval of a

28   drug called Cymbalta (also known by the chemical name duloxetine hydrochloride) 20, 30 and 60

1  mg capsules to treat major depressive disorder and diabetic neuropathic pain. It also later submitted

2  supplemental NDA's for additional indications.

3      40.    Cymbalta has gained FDA-approval for: Major Depressive Disorder (MDD)

4  (approved August 2004), Diabetic Peripheral Neuropathic Pain (DPNP) (approved September 2004)

5  Generalized Anxiety Disorder (GAD) (approved 2007), and Fibromyalgia (FM) (approved July

6  2008).

7      41.    Two of these indications are pain-related. Fibromyalgia is estimated to affect 2

8  percent of the U.S. population - approximately 5 million people - the majority of those diagnosed

9  being women. Diabetic Peripheral Neuropathic Pain is estimated to affect less than 10 million

10  persons of the U.S. population.

11  **Suicide and other Dangers**

12      42.    In 2005, the FDA announced that Cymbalta was causing more than twice the rate of

13  suicide attempts in women prescribed the drug for stress urinary incontinence -- a use not approved

14  in the U.S.

15      43.    In May 2006, the FDA ordered Lilly to add a black box to Cymbalta warning about

16  suicides  and  antidepressants  in  young  adults.  A  'black  box'  designation  is  an

17  FDA-recommended/mandated warning based upon clinical research studies, for certain drugs that

18  may cause serious and potentially life-threatening side effects. The FDA requires that a black box

19  warning be placed on the labeling or literature of a prescription drug, or in literature describing it.

20  It is the strongest warning the FDA requires.

21      44.    Cymbalta is a dangerous drug even when prescribed for on-label use. It is even more

22  dangerous for patients in chronic pain, who already are prone to suicidal ideation.

23      45.    Cymbalta is known to cause a litany of side effects across all age groups.  For

24  instance, in October 2005, the FDA announced that postmarketing reports of liver injury suggest that

25  patients with pre-existing liver disease who take Cymbalta may have an increased risk for further

26  liver damages, resulting in a broader warning on Cymbalta's label.

27  **Misleading promotional materials**

28      46.    In a letter dated September 9, 2005, the FDA sent  Lilly a letter informing the

1 company that it found the company's promotional materials and activities "to be false or misleading,
2 and in violation of the Federal Food, Drug, and Cosmetic Act." In particular, the FDA cautioned
3 Lilly overstating the efficacy of Cymbalta for DPNP such as the statement, "significantly less pain
4 interference with overall functioning." The FDA also warned Lilly about failing to communicate
5 some of the most serious risks associated with Cymbalta.

6       47.    In October 2006, Lilly was told by the FDA to "immediately cease" its Cymbalta
7 campaign for diabetic nerve pain -- an approved use -- which promised "significantly less pain
8 interference with overall functioning." The FDA said the claim "has not been demonstrated by
9 substantial evidence or . . . clinical experience" nor do the Cymbalta marketing pieces give
10 precautions about liver toxicity or reveal risks for patients with certain conditions.

11      48.    By a letter dated September 21, 2007, the FDA informed Lilly that it found the
12 company's promotional materials and activities "to be false or misleading, and in violation of the
13 Federal Food, Drug, and Cosmetic Act." In particular, the FDA cautioned Lilly about its misleading
14 journal ads which failed to disclose that Cymbalta is "associated with several important risks... but
15 the ads fail to disclose any of these risks within the main parts of the ads."

16      **Lilly submits and then withdraws its application for FDA approval for chronic pain**

17      49.    In August 2007, Defendant Lilly submitted a supplemental new drug application for
18 the use of Cymbalta to treat chronic pain. According to a June 2, 2008 Washington Drug Letter
19 article, the Cymbalta sNDA was based on three double-blind, randomized trials -- one testing the
20 drug in 230 patients with chronic osteoarthritis pain of the knee and two testing the product in a total
21 of 630 patients with chronic lower back pain, the company said. The application also included data
22 from previously completed studies in patients with diabetic peripheral neuropathic pain and
23 fibromyalgia.

24      50.    In November 2008, Defendant Lilly withdrew its supplemental new drug application
25 for the use of Cymbalta to treat chronic pain, amidst FDA questions about its efficacy. Lilly has been
26 quoted since then as suggesting it would resubmit its NDA with the results of a new knee study, by
27 mid 2009.

28      51.    Lilly's 2008 withdrawal of the supplemental NDA for chronic pain indication suggest

1   that Cymbalta is of questionable efficacy at best. It could only have reached the enormous

2   prescription levels it has by misleading sales pitches about its safety and efficacy for chronic pain.

3   This wrongful conduct is excacerbated because it is a drug with serious known adverse events and

4   side effects, which was not disclosed to the sales force (and therefore to physicians) until after the

5   information was publicly known.

6   **LILLY UNLAWFULLY PROMOTED CYMBALTA FOR THE TREATMENT OF CHRONIC PAIN**

7

8       52.     Lilly's management trained and directed its sales force to promote Cymbalta for
    off-label uses.

9

10      53.     Lilly began planning its national, aggressive off-label marketing campaign for

11  Cymbalta even before Cymbalta had received FDA approval.

12      54.     Through this planning Lilly funded clinical studies for Cymbalta, for on and off-label

13  uses, which ultimately Lilly planned to be used by its sales representatives to promote Cymbalta.

14  Indeed, Relator was given such studies by Lilly with the expectation that learn the details of the

15  studies backwards and forwards and use the talking points provided by Lilly, in promoting Cymbalta

16  off-label.

17      55.     By focusing on symptoms rather than the diagnoses of DPNP or FM, Lilly intended

18  to overcome Cymbalta's lack of any FDA approved market for Cymbalta in the chronic pain market.

19      56.     Lilly promoted Cymbalta for the treatment of chronic pain, even though Lilly knew

20  that its studies of Cymbalta for the treatment of chronic pain had yielded mixed clinical results, and
    also knew that Cymbalta had serious risks and side effects.

21

22      57.     Lilly implemented this off-label marketing campaign targeting pain physicians

23  (certain anesthesiologists and physiatrists), orthopedic surgeons, neurosurgeons, thoracic surgeons

24  and other physicians, even though Lilly knew that there was virtually no on-label use for Cymbalta

25  in these physician markets. Relator received "sample card kits" which listed specific physicians he

26  was to call on, many of which never treated patients for whom Cymbalta's indicated uses were

27  appropriate.

28      58.     Defendant Lilly's off-label promotion of Cymbalta raised safety issues, affected the

1    treatment of patients, and undermined the FDA drug approval process. Lilly undertook this illegal

2    off-label promotion for its own financial gain, despite the potential risk to patients' health and lives.

3        59.    The promotion has worked: 30-45% of all Cymbalta prescriptions were written for

4    chronic pain, and this is excluding all prescriptions written by psychiatrists (who conceivably could

5    be writing Cymbalta on-label.) Cymbalta's sales were generated from off-label promotion of uses

6    for chronic pain such as post operative pain, cancer break-through pain, lower back pain, and knee

7    pain.

8        60.    Relator's call lists (targets) for Cymbalta included Orthopaedic Surgeons,

9    Neurosurgeons, Neurologists, Anesthesiologists/Pain Management physicians, Pain Management

10   Clinics, Thoracic Surgeons as well as other types of surgeons.

11       61.    All of those physicians were in addition to the on-label targets: Psychiatrists, Primary

12   Care Physicians, Internal Medicine Physicians, Podiatrists, and Rheumetologists (Fibromyalga

13   indication).

14       62.    Anticipating the possibility of resistance from physicians in prescribing Cymbalta for

15   chronic pain, Defendant Lilly specifically trained its sales representatives on how to

16   respond to doctors' concerns about off-label uses of Cymbalta.

17       63.    Defendant Lilly retained doctors to speak to other doctors during peer-to-peer sessions

18   about off-label uses of Cymbalta for various chronic pain states.

19       64.    Through its communications to its sales force and to doctors Lilly deliberately omitted

20   the following critical information:

21       a.    Lilly omitted negative evidence about Cymbalta;

22       b.    Lilly omitted information that virtually all publications and studies that

23   allegedly supported Cymbalta's chronic pain uses had been initiated and funded by Lilly, and those

24   that were not initiated and funded by Lilly were shared with neither sales representatives nor

25   physicians.

26       c.    Lilly omitted information that the doctors who were involved in peer selling had been

27   paid substantial subsidies to use Lilly drugs on their patients for non-medically accepted or

28   non-medically necessary purposes;

1    d.    Lilly omitted information related to dangerous side effects revealed through Lilly's

2  internal research, adverse event reports, and independent research.

3    65.    Through its communications to the sales force and physicians:

4    a.    Lilly suggested mechanisms of action that could explain Cymbalta's efficacy,

5  safety profile and use for chronic pain even though Cymbalta's mechanism of action are not

6  understood; and even though the explanation was a stretch at best. It trained its sales force to pitch

7  to physicians that since Cymbalta was FDA-approved for DPNP and FM, indications to other pain

8  states, that it was also highly effective for chronic pain.

9    b.    Lilly falsely claimed that it expected the chronic pain indication to gain FDA

10  approval in 2009.

11    c.    Lilly provided sales representatives with slanted "Verbatim's" to respond to

12  physician inquiries about the latest adverse FDA actions or adverse news about Cymbalta. For

13  instance, Lilly issued a "Verbatim" for sales representative use in response to Dr. Thomas Hardy et

14  al 2007 article suggesting that treatment with Duloxetine for neuropathic pain impacts glycemic

15  control.

16    66.    To enhance the off-label promotion, the Lilly created additional sales forces:

17    a.    In late 2007, it implemented a DPNP Representative (called "Pain Focused

18  Rep") and placed one in most districts.

19    b.    In addition, Lilly engaged contract sales representatives through a subsidiary

20  of Quintiles Transactional Corporation, called NovaQuest, in order to quickly mobilize an additional

21  sales force to market Cymbalta to pain physician targets. According to a Q4 2008 Earnings

22  conference call, Lilly has been paying Quintiles a 8.25% royalty on Cymbalta.

23    c.    In 2008, the cardiology sales force for a short period of time was also

24  marketing Cymbalta.

25    67.    Lilly also re-organized in part. In 2007, the Cymbalta Brand Team separated its

26  organization of Cymbalta marketing into two district parts: pain and mood.

27    68.    Lilly gave the sales force the incentive and the tools to market off-label:

28    a.    The sales force was given credit for every prescription of Cymbalta, not just

1  on-label prescriptions.

2          b.     The sales force was required by Lilly to participate in and to graduate from
3  a home study course followed by a 3 and one half week training course at Lilly's corporate
4  headquarters in Indianapolis, Indiana. In doing so, Relator and colleagues received training from
5  Lilly corporate training officials on subjects such as how to induce physicians to ask "unsolicited"
6  questions about Cymbalta off-label uses and to focus the marketing message on symptoms and
7  behaviors, and to tell physicians about Cymbalta's superior efficacy in alleviating pain by
8  working/affecting the descending pain pathway which, according to Lilly training, its speakers and
9  detail pieces, extends from the brain throughout the spinal cord.

10          c.     Lilly reinforced this training by providing mandatory role playing sessions
11  designed to replicate what the sales person would experience in the field when calling on pain
12  physicians.

13          d.     Among other things, Lilly salespersons including Relator, engaged in role
14  playing exercises that emulated physician sales calls.

15          e.     Relator, having worked in the pharmaceutical sales prior to Lilly, vocally
16  questioned the Lilly managers about the legality of the marketing practices being taught, specifically
17  he questioned the off-label nature of the Cymbalta marketing campaign promoting Cymbalta's safety
18  and efficacy for chronic pain to physicians. Relator was assured that by following Lilly's training on
19  how to deliver the Cymbalta pain message, off-label regulations would not be violated.

20          f.     In addition to communicating such practices during frequent regional and
21  district sales conferences. Lilly engrained its off-label marketing message during annual national
22  sales meetings, Division, Area and District meetings, and other specific gatherings.

23          g.     Once out on the field, Relator was given Cymbalta marketing materials and
24  "detail aids" useable for selling Cymbalta in the chronic pain market. Lilly's Cymbalta sales materials
25  were the creation of the Cymbalta Brand Team, the division within Lilly responsible for developing
26  the marketing and promotional selling message for Cymbalta in the United States.

27          h.     Lilly sent the Relator and colleagues to Chicago in 2007 to become a
28  "Certified Pain Representative" with the American Society of Pain Management. Most of the

1    meetings and course curriculum involved education about different pain states unrelated to Cymbalta

2    indications. They also included a lot of off label discussion by Lilly paid doctors about Cymbalta.

3    Other Lilly sales representatives and managers were present.

4                    i.    From about the summer of 2007 until the launch of Cymbalta's, in anticipation

5    of FDA approval of Fibromyalga indication, at various meetings (District, Area & National) multiple

6    DM's from multiple district's would meet with the representatives to rehearse and press the

7    importance of off-label pain marketing. Managment would send the specialty reps to different rooms

8    to meet and and rehearse, sometimes with different districts. In this regard, Relator not only met with

9    his DM, Jim Delisle, but also Deb Shelton (Jax/Daytona), Robert Dugan (Orlando, "Cymbalta Pain

10   Champ"). Relator knows of other Lilly reps in Florida under different managers as well as other Lilly

11   reps in different parts of the country that were undergoing the same process.

12                   j.    Lilly monitored the success of the off-label promotional program by carefully

13   monitoring sales revenues of each sales representative and setting high sales goals expected to be

14   met as an ostensible measure of job performance. This includes rewarding sales representatives for

15   off-label as well as on-label prescriptions. The sales force received IMS flash data (weekly) listing

16   every physician who wrote any of their drugs, and also received information quarterly, called the

17   "Quarterly Dashboard." The sales force also received a Neuroanalysis Tool, which provided rankings

18   of physicians, losers and gainers on each drug.

19                   k.    Lilly bestowed sales representatives with large budgets to expend upon

20   physicians to maintain and expand Cymbalta's chronic pain off-label market and resulting

21   extraordinary revenues. In his first 6 months with Lilly, Relator was furnished with over $100,000

22   in program monies to spend on physicians, and did.

23                   l.    Lilly facilitated the use of physician speakers to further carry its message.

24   Relator had just over 100 physician-targets in his District and about 5-6 were paid speakers. All

25   except one of them earned the maximum yearly cap (set by Lilly) of $120,000 (one-hundred twenty

26   thousand dollars) in 2006, and 2007, $90,000 (ninety thousand dollars) in 2008. There were also

27   ways to get around the cap, as one of the Relator's physicians earned an extra $30,000 for

28   "consultation with the Brand Team." (Speakers were paid $1000, $1,500, or $2,000 for each

1   engagement. Representatives are encouraged to get the good speakers to their cap amounts.)

2          m.     At physician speaker meetings there were no corrections or admonitions by

3   anyone on behalf of Lilly if speakers deviated from on-label discussion. Moreover, additional slides

4   which suggested or prompted off-label use were presented by physician-speakers with no oversight

5   by Lilly. In late 2008, the home office did send out a letter admonishing the sales force to better

6   police the speakers, but it was never discussed or followed up on the District level.

7          n.     Dinners were provided by Lilly to physicians for lavish amounts. It was not

8   necessary to have a physician speaker for these events if there were 6 or less physician attendees.

9          o.     Lilly management approved huge speaker fee budgets as a means to disguise

10  large payments to physicians who were willing to prescribe Cymbalta off label. Lilly established

11  large budgets for each representative to induce physicians to write off label. The speaking fees were

12  from $1,000 to $2,000 for "peer-to-peer," "lunch and learn," as well as dinners with only one other

13  physician present.

14         p.     Physicians were even "groomed" by Lilly to be speakers by attending all

15  expense paid speaking seminars in resort-like atmospheres. These seminars were in truth designed

16  to market Cymbalta.

17         q.     Sales representatives, including Relator, were instructed by Lilly on

18  implementing "Peer-to-Peer Programs" intended on having paid physicians lecture on designated

19  topics, including off-label topics. Lilly paid for the lavish meals/wine, etc. for all physicians in

20  attendance. As long as a physician responded to the invite positively, then the physician could be

21  factored into the total cost of the program in effect increasing the amount to be spent on any

22  physician who attended. Also, non-prescribers, such as a kidney physician or lung physician, or any

23  other Lilly sales force member, could attend and be paid for.

24         r.     Sales representatives, including Relator, would be provided with small gifts

25  to provide to physicians at the end of 20 minute web or teleconferences.

26      69.     The Lilly Bureau even had a Form for phone consulting, where physicians could earn

27  $700 to call another physician to discuss prescribing Cymbalta.

28

1  **FEDERAL LAW PROHIBITS DRUG MANUFACTURERS FROM ENGAGING IN**
2  **OFF-LABEL MARKETING TO PROTECT THE HEALTH AND SAFETY OF PATIENTS**

3      70.    A drug's FDA-approved uses and dosages are called the drug's "indication."
4  "Off-label" prescribing of drugs occurs when a drug is used by a medical professional beyond the
5  drug's indication. This includes prescribing a drug for a condition not indicated on the label, treating
6  the indicated condition at a different dose or frequency than specified in the label, or to treat a
7  different patient population (e.g. treating a child with the drug when the drug is approved to treat
8  adults).

9      71.    Pursuant to the Food and Drug Administration Modernization Act of 1997
10  ("FDAMA"), an off-label use of a drug can cease to be off-label only if the manufacturer conducts
11  studies and submits a new drug application demonstrating to the satisfaction of the FDA that the
12  product is safe and effective for the proposed new use or uses. 21U.S.C. §360aaa(b) and (c).

13      72.    Because of its inherent dangers, off-label marketing by pharmaceutical companies is
14  closely regulated by the FDA and the law. These regulations protect patients and consumers by
15  insuring that drug companies do not promote drugs for uses other than those found to be safe and
16  effective by an ostensibly independent, scientific governmental body, the FDA.

17      73.    Absent Lilly's unapproved, illegal off-label marketing, which included false
18  representations, and its gifts to physicians, Cymbalta would not have been prescribed by physicians
19  for off-label indications. Lilly's off-label marketing programs have been extremely successful,
20  leading to the submission of claims to the Government Healthcare Programs for medically
21  unnecessary and imprudent prescriptions which otherwise would not have been paid.

22      74.    Because prescriptions for off-label uses generally are not eligible for reimbursement,
23  under Government Healthcare Program regulations, submission of a claim for reimbursement for a
24  drug prescribed off-label constitutes a false claim for the purposes of the Federal and State False
25  Claims Acts. While it is a pharmacy, by virtue of the reimbursement system, which unwittingly
26  submits the false prescription drug claim, the person or persons who knowingly cause(s) such a claim
27  to be presented to the Government Healthcare Programs is liable under the law.

28      75.    The unwitting participation of the pharmacies in the submission of false claims was

17
**FALSE CLAIMS ACT COMPLAINT**

1  not only foreseeable; it was an intended consequence of Lillys' scheme of fraud.

2  **Claims Submitted to Government Healthcare Programs for
Off-Label Uses Were Not Covered**

76.    In the Medicaid Program, states will not receive FFP ("Federal Financial Participation") if a drug, as prescribed, is not for a medically acceptable use. FFP is available to states only for "covered outpatient drugs." 42 U.S.C. § 1396b(i)(10). As a result, states' own laws and pharmacy regulations require that drugs must be used for a medically accepted use and therefore fit the definition of a covered outpatient drug.

77.    "Covered outpatient drugs" do not include drugs that are "used for a medical indication which is not  a medically accepted indication." Id. § 1396r-8(k). A medically accepted indication is defined as a use "which is approved under the Federal Food Drug and Cosmetic Act" ("FDCA") or which is "supported by one or more citations included or approved for inclusion" in specified drug compendia. Id. § 1396r-8(k)(6).  42 U.S.C.§ 1396r-8(g)(1)(B)(I) identifies the compendia to be consulted: American Hospital Formulary Service Drug Information; United States Pharmacopeia-Drug Information; and the DRUGDEX Information System. The compendia will hereinafter be referred to collectively as "the Drug Compendia."

78.    Medicare Part A generally pays for inpatient services for eligible beneficiaries in hospital, hospice and skilled nursing facilities, as well as some home healthcare services. 42 U.S.C. §§1395e - 42 U.S.C. §§1395i-5. Prescription drugs are covered under Medicare Part A only if they are administered on an inpatient basis in a hospital or similar setting, and are "reasonable and necessary."

79.    Medicare Part B pays for some types of prescription drugs that are not administered in a hospital setting , and that are "reasonable and necessary.". 42 U.S.C. §1395k(a); 42 U.S.C. §1395x(s)(2); 42 C.F.R. §405.517.  These typically include drugs administered by a physician or other provider in an outpatient setting, some orally administered anti-cancer drugs and antiemetics (drugs which control the side effects caused by chemotherapy), and drugs administered through durable medical equipment such as a nebulizer.  42 U.S.C. §1395k(a); 42 U.S.C. §1395x(s)(2); 42 C.F.R. §405.517.

**FALSE CLAIMS ACT COMPLAINT**

1   80. The Medicare program Part D drug benefit covers all drugs that are considered
2 "covered outpatient drugs" under 42 U.S.C. §1396r-8(k).

3   81. The off-label uses discussed herein were not covered by any of the Government
4 Healthcare Programs. They are not supported by any legitimate clinical research, and could not,
5 under any circumstances, be determined to be "medically accepted as safe and effective" or
6 "reasonable and necessary"for such uses or supported by the compendia set forth in 42 U.S.C. §
7 1396r-8(k) for such uses. Claims for such off-label uses were therefore not covered by Government
8 Healthcare programs.

9   82. Lilly was aware that the natural and probable consequence of its promotion of
10 off-label uses of Cymbalta, was that health care providers would submit claims for payment to
11 Government Healthcare Programs for the off-label uses.

12   83. Notwithstanding this knowledge, Lilly illegally, vigorously, and without any thought
13 to the possible negative health effects to which it subjected patients, promoted these off-label uses.
14 Lilly was aware that its illegal promotion did in fact result in false claims to these and other
15 government payors for the off-label uses.  Lilly was aware that its promotion activities was a
16 substantial factor in producing the claims.

17   84. When pharmacies, physicians and other healthcare providers submitted claims based
18 upon a physician's prescription for the off-label uses, the claims they submitted were false because
19 such off-label uses were not supported by a citation in one of the Drug Compendia specified by 42
20 U.S.C. § 1396r-8(g)(1)(B)(I), (Medicaid) not supported by "clinical research that appears in
21 peer-reviewed medical literature," and could not, under any circumstances, be determined to be
22 "medically accepted generally as safe and effective"or "reasonable and necessary." (Medicare) and
23 not covered by other Government Healthcare Programs, See, e.g., TRICARE Policy Manual
24 6010.47-M, Chapter 7, Section 7.1 (B) (2) (March 15, 2002); CHAMPVA Policy Manual, Chapter
25 2, Section 22.1, Art. II (A)(2) (June 6, 2002).

26   85. Since Lilly cannot submit claims directly to Government Healthcare Programs, it
27 intentionally defrauded physicians to prescribe Cymbalta by engaging in a nationwide materially
28 misleading off-label marketing campaign for the intended and foreseeable effect of causing

1  physicians and pharmacists to submit claims to publicly-funded health plans that were ineligible for
2  reimbursement pursuant to these programs' regulations.

3    86.    False claims to these government healthcare programs for off-label prescribing was
4  the direct and proximate result of unlawful off-label marketing efforts by Lilly. Lilly caused the
5  submission of these claims.

6    87.    Lilly caused the submission of false claims, since healthcare providers submitted
7  Pharmacy Claim Forms and CMS-1500 Forms to Government Healthcare Programs, and the states
8  submitted Form CMS-64 to the Federal Government, all claiming reimbursement for Cymbalta for
9  such off-label uses.

10                              **COUNT 1**

11                          **FALSE CLAIMS ACT**

12    88.    Relator realleges and incorporate by reference paragraphs 1 through 88 as though
13  fully set forth herein.

14    89.    This is a claim by Relator, on behalf of The United States, for treble damages and
15  penalties under the False Claims Act, 31 U.S.C. 3729-3733 against Defendant for knowingly causing
16  to be presented false claims to Government Healthcare Programs. From on or about January 2002
17  through present, in the Northern District of California and elsewhere throughout the United States,
18  Defendant has knowingly and willfully violated the False Claims Act by submitting and causing false
19  claims to be submitted.

20    90.    Defendant has knowingly caused pharmacies and other healthcare providers to submit
21  Pharmacy, CMS-1500, and other claim forms for payment, knowing that such false claims would
22  be submitted to state Government Healthcare Programs for reimbursement, and knowing that such
23  Government Healthcare Programs were unaware that they were reimbursing prescriptions for
24  prescriptions induced by kickbacks and/or for non-covered uses and therefore false claims. By virtue
25  of the acts described in this Complaint, Defendant knowingly presented or caused to be presented,
26  false or fraudulent claims to the United States Government for payment or approval, in violation of
27  31 U.S.C. §3729(a)(1) and 31 U.S.C. §3729(a)(2).

28    91.    Defendant has violated 31 U.S.C. §3729(a)(2) by causing the states to submit false

1    claims to the United States Government in Form CMS-64 (Quarterly Medicaid Statement of

2    Expenditures for the Medical Assistance Program), which falsely certified that all drugs for which

3    federal reimbursement was sought, including Cymbalta, were paid for in compliance with federal

4    law. States submitted false claims to the United States Government because when Cymbalta, was

5    prescribed off-label, it was not prescribed for a medically accepted indication, yet states sought

6    reimbursement from the United States Government for all Cymbalta expenditures.

7      92.     Defendant caused false claims to be submitted, resulting in Government Program

8    reimbursement to healthcare providers in the millions of dollars, in violation of the False Claims Act,

9    31 U.S.C. §3729 et. seq. and the Anti-Kickback Act 42 U.S.C. §1320a-7b(b)(2)(A).

10      93.     The United States is entitled to three times the amount by which it was damaged, to

11    be determined at trial, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00

12    for each false claim presented or caused to be presented.

13      94.     WHEREFORE, Relator respectfully requests this Court enter judgment against

14    Defendant, as follows:

15      (a)     That the United States be awarded damages in the amount of three times the
16             damages sustained by the U.S. because of the false claims alleged within this
                 Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

17      (b)     That civil penalties of $11,000 be imposed for each and every false claim that
18             Defendant caused to be presented to the Government Healthcare Programs under the
                 Federal False Claims Act;

19      (c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys'
20             fees, costs, and expenses which the Relator necessarily incurred in bringing and
                 pressing this case;

21      (d)     That the Relator be awarded the maximum amount allowed pursuant to the
22             Federal False Claims Act; and

      (e)     That the Court award such other and further relief as it deems proper.

23

24 **COUNT II**

25 **CALIFORNIA FALSE CLAIMS ACT**

       95.     Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

26    above as if fully set forth herein.

27      96.     This is a *qui tam* action brought by Relator on behalf of the State of California to

28

21
**FALSE CLAIMS ACT COMPLAINT**

1 || recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code

2 || § 12650 et seq.

3          97.     Cal. Gov't Code § 12651(a) provides liability for any person who

4                  (1) knowingly presents, or causes to be presented, to an officer or
                   employee of the state or of any political division thereof, a false claim
5                  for payment or approval;
                   (2) knowingly makes, uses, or causes to be made or used a false
6                  record or statement to get a false claim paid or approved by the state
                   or by any political subdivision;
7                  (3) conspires to defraud the state or any political subdivision by
                   getting a false claim allowed or paid by the state or by any political
8                  subdivision.
                   ...
9                  (8) is a beneficiary of an inadvertent submission of a false claim to
                   the state or a political subdivision, subsequently discovers the falsity
10                 of the claim, and fails to disclose the false claim to the state or the
                   political subdivision within a reasonable time after discovery of the
11                 false claim.

12         98.     In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal.

13 Bus. & Prof. Code § 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal

14 patients pursuant to Cal. Welf. & Inst. Code §14107.2.

15         99.     Defendant violated Cal. Bus. & Prof. Code § 650 and 650.1 and Cal. Welf. & Inst.

16 Code § 14107.2 by engaging in the conduct described herein.

17         100.    Defendant furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused

18 false claims to be made, used and presented to the State of California by its deliberate and systematic

19 violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, Cal. Bus. &

20 Prof. Code § 650-650.1 and Cal. Welf. & Inst. Code § 14107.2 and by virtue of the fact that none

21 of the claims submitted in connection with its conduct were even eligible for reimbursement by the

22 government funded healthcare programs.

23         101.    The State of California, by and through the California Medicaid program and other

24 state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

25 healthcare providers and third party payers in connection therewith.

26         102.    Compliance with applicable Medicare, Medi-Cal and the various other federal and

27 state laws cited herein was an implied, and upon information and belief, also an express condition

28

1  of payment of claims submitted to the State of California in connection with Defendant's conduct.

2  Compliance with applicable California statutes, regulations and Pharmacy Manuals was also an

3  express condition of payment of claims submitted to the State of California.

4      103.    Had the State of California known that false representations were made to both the

5  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

6  it would not have paid the claims submitted by healthcare providers and third party payers in

7  connection with that conduct.

8      104.    As a result of Defendant's violation of Cal. Gov't Code § 12651(a), the State of

9  California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

10     105.    Relator is a private citizen with direct and independent knowledge of the allegations

11 of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of

12 themselves and the State of California.

13     106.    This Court is requested to accept pendant jurisdiction over this related state claim as

14 it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages

15 to the State of California in the operation of its Medicaid program.

16     WHEREFORE, Relator respectfully requests this Court to award the following damages to

17 the following parties and against Defendant:

18     To the State of California:

19         (1)    Three times the amount of actual damages which the State of California has
                  sustained as a result of Defendant's conduct;
20         (2)    A civil penalty of up to $10,000 for each false claim which Defendant
                  presented or caused to be presented to the State of California;
21         (3)    Prejudgment interest; and
           (4)    All costs incurred in bringing this action.
22
       To Relator:
23
           (1)    The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or
24                any other applicable provision of law;
           (2)    Reimbursement for reasonable expenses which Relator incurred in
25                connection with this action;
           (3)    An award of reasonable attorneys' fees and costs; and
26         (4)    Such further relief as this Court deems equitable and just.

27

28

1      **COUNT III**

2      **DELAWARE FALSE CLAIMS AND REPORTING ACT**

3      107.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

4   above as if fully set forth herein.

5      108.    This is a *qui tam* action brought by Relator on behalf of the State of Delaware to

6   recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title

7   6, Chapter 12 of the Delaware Code.

8      109.    6 Del. C. § 1201(a) provides liability for any person who-

9           (1) knowingly presents, or causes to be presented, directly or
            indirectly, to an officer or employee of the Government a false or
10          fraudulent claim for payment or approval;
            (2) knowingly makes, uses, or causes to be made or used, directly or
11          indirectly, a false record or statement to get a false or fraudulent claim
            paid or approved; or
12          (3) conspires to defraud the Government by getting a false or
            fraudulent claim allowed or paid.
13

14     110.    In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration

15  (including kickbacks, bribes or rebate) directly or indirectly, overtly or covertly, in cash or in kind

16  in return for the furnishing of any medical care or services for which payment may be made in whole

17  or in part under any public assistance program.

18     111.    Defendant violated 31 Del. C. § 1005 by engaging in the conduct described herein.

19     112.    Defendant furthermore violated 6 Del. C. § 1201(a) and knowingly caused false

20  claims to be made, used and presented to the State of Delaware by its deliberate and systematic

21  violation of federal and state laws, including the FDCA, the Anti-Kickback Act, and 31 Del. C. §

22  1005 and by virtue of the fact that none of the claims submitted in connection with its conduct were

23  even eligible for reimbursement by the government-funded healthcare programs.

24     113.    The State of Delaware, by and through the Delaware Medicaid program and other

25  state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

26  healthcare providers and third party payers in connection therewith.

27     114.    Compliance with applicable Medicare, Medicaid and the various other federal and

28  state laws cited herein was an implied, and upon information and belief, also an express condition

1  of payment of claims submitted to the State of Delaware in connection with Defendant's conduct.

2  Compliance with applicable Delaware statutes, regulations and Pharmacy Manuals was also an

3  express condition of payment of claims submitted to the State of Delaware.

4      115.   Had the State of Delaware known that false representations were made to both the

5  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

6  it would not have paid the claims submitted by healthcare providers and third party payers in

7  connection with that conduct.

8      116.   As a result of Defendant's violation of 6 Del. C. § 1201(a), the State of Delaware has

9  been damaged in an amount far in excess of millions of dollars exclusive of interest.

10      117.   Relator is a private citizen with direct and independent knowledge of the allegations

11  of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of

12  themselves and the State of Delaware.

13      118.   This Court is requested to accept pendant jurisdiction of this related state claim as it

14  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

15  the State of Delaware in the operation of its Medicaid program.

16      WHEREFORE, Relator respectfully requests this Court to award the following damages to

17  the following parties and against Defendant:

18      To the State of Delaware:

19          (1)   Three times the amount of actual damages which the State of Delaware has
                sustained as a result of Defendant's conduct;

20          (2)   A civil penalty of not less than $5,500 and not more than $11,000 for each
                false claim which Defendant caused to be presented to the State of Delaware;

21          (3)   Prejudgment interest; and
        (4)   All costs incurred in bringing this action.

22      To Relator:

23

24          (1)   The maximum amount allowed pursuant to 6 Del C. § 1205, and/or any other
                applicable provision of law;

25          (2)   Reimbursement for reasonable expenses which Relator incurred in
                connection with this action;

26          (3)   An award of reasonable attorneys' fees and costs; and
        (4)   Such further relief as this Court deems equitable and just.

27

28

1

## COUNT IV

2

## FLORIDA FALSE CLAIMS ACT

3      119.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

4   above as if fully set forth herein.

5      120.    This is a *qui tam* action brought by Relator on behalf of the State of Florida to recover

6   treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

7      121.    Fla. Stat. § 68.082(2) provides liability for any person who-

8              (a) knowingly presents or causes to be presented to an officer or
               employee of an agency a false or fraudulent claim for payment or
9              approval;
               (b) knowingly makes, uses, or causes to be made or used a false
10             record or statement to get a false or fraudulent claim paid or approved
               by an agency;
11             (c) conspires to submit a false or fraudulent claim to an agency or to
               deceive an agency for the purpose of getting a false or fraudulent
12             claim allowed or paid.

13
       122.    In addition, Fla. Stat. § 409.920 makes it a crime to:
14
               (c) knowingly charge, solicit, accept, or receive anything of value,
15             other than an authorized copayment from a Medicaid recipient, from
               any source in addition to the amount legally payable for an item or
16             service provided to a Medicaid recipient under the Medicaid program
               or knowingly fail to credit the agency or its fiscal agent for any
17             payment received from a third-party source;
                                          * * *
18             (e) knowingly, solicit, offer, pay or receive any remuneration,
               including any kickback, bribe or rebate, directly or indirectly, overtly
19             or covertly, in cash or in kind, in return for referring an individual to
               a person for the furnishing of any item or service for which payment
20             may be made, in whole or in part, under the Medicaid program, or in
               return for obtaining, purchasing, leasing, ordering, or arranging, for
21             or recommending, obtaining, purchasing, leasing, or ordering any
               goods, facility, item, or service, for which payment may be made, in
22             whole or in part, under the Medicaid program.

23
       123.    Fla. Stat. §456.054(2) also prohibits the offering, payment, solicitation, or receipt of
24
    a kickback to a healthcare provider, whether directly or indirectly, overtly or covertly, in cash or in
25
    kind, in exchange for referring or soliciting patients.
26
       124.    Defendant violated Fla. Stat. § 409.920(c) and (e) and §456.054(2) by engaging in
27
    the conduct described herein.
28

1   125.   Defendant furthermore violated Fla. Stat. § 68.082(2) and knowingly caused false
2   claims to be made, used and presented to the State of Florida  by its deliberate and systematic
3   violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, Fla. Stat. §
4   409.920(c) and (e) and §456.054(2) and by virtue of the fact that none of the claims submitted in
5   connection with its conduct were even eligible for reimbursement by the government-funded
6   healthcare programs.

7   126.   The State of Florida, by and through the Florida Medicaid program and other state
8   healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
9   providers and third party payers in connection therewith.

10   127.   Compliance with applicable Medicare, Medicaid and the various other federal and
11   state laws cited herein was an implied, and upon information and belief, also an express condition
12   of payment of claims submitted to the State of Florida in connection with Defendant's conduct.
13   Compliance with applicable Florida statutes, regulations and Pharmacy Manuals was also an express
14   condition of payment of claims submitted to the State of Florida.

15   128.   Had the State of Florida known that false representations were made to both the FDA
16   and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it
17   would not have paid the claims submitted by healthcare providers and third party payers in
18   connection with that conduct.

19   129.   As a result of Defendant's violation of Fla. Stat. § 68.082(2), the State of Florida has
20   been damaged in an amount far in excess of millions of dollars exclusive of interest.

21   130.   Relator is a private citizen with direct and independent knowledge of the allegations
22   of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of
23   themselves and the State of Florida.

24   131.   This Court is requested to accept pendant jurisdiction of this related state claim as it
25   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
26   the State of Florida in the operation of its Medicaid program.

27   WHEREFORE, Relator respectfully request this Court to award the following damages to
28   the following parties and against Defendant:

To the State of Florida:

    (1)    Three times the amount of actual damages which the State of Florida has sustained as a result of Defendant's conduct;

    (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Florida

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Relator:

    (1)    The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action,

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT V

## GEORGIA FALSE MEDICAID CLAIMS ACT

132.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88 above as if fully set forth herein.

133.    This is a *qui tam* action brought by Relator on behalf of the State of Georgia to recover treble damages and civil penalties under the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168 (2008) *et seq.*

134.    O.C.G.A. § 49-4-168.1(a) provides liability for any person who:

    (1)    knowingly presents, or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

    (2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

    (3)    conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

135.    Defendant violated O.C.G.A. § 49-4-168 *et seq.* by engaging in the conduct described herein.

136.    Defendant furthermore violated O.C.G.A. § 49-4-168 and knowingly caused false claims to be made, used and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for

1    reimbursement by the government-funded healthcare programs.

2         137.   The State of Georgia, by and through the Georgia Medicaid program and other state

3    healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

4    providers and third party payers in connection therewith.

5         138.   Compliance with applicable Medicare, Medicaid and the various other federal and

6    state laws cited herein was an implied, and upon information and belief, also an express condition

7    of payment of claims submitted to the State of Georgia in connection with Defendant's conduct.

8    Compliance with applicable Georgia statutes, regulations and Pharmacy Manuals was also an

9    express condition of payment of claims submitted to the State of Georgia.

10        139.   Had the State of Georgia known that false representations were made to both the FDA

11   and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it

12   would not have paid the claims submitted by healthcare providers and third party payers in

13   connection with that conduct.

14        140.   As a result of Defendant's violation of O.C.G.A. § 49-4-168, the State of Georgia has

15   been damaged in an amount far in excess of millions of dollars exclusive of interest.

16        141.   Relator is a private citizen with direct and independent knowledge of the allegations

17   of this Complaint, who has brought this action pursuant to O.C.G.A. § 49-4-168 on behalf of herself

18   and the State of Georgia.

19        142.   This Court is requested to accept pendant jurisdiction of this related state claim as it

20   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

21   the State of Georgia in the operation of its Medicaid program.

22        WHEREFORE, Relator respectfully requests this Court to award the following damages to

23   the following parties and against Defendant:

24        To the State of Georgia:

25             (1)   Three times the amount of actual damages which the State of Georgia has
                     sustained as a result of Defendant's conduct;

26             (2)   A civil penalty of not less than $5,500 and not more than $11,000 for each
                     false claim which Defendant caused to be presented to the State of Georgia;

27             (3)   Prejudgment interest; and
               (4)   All costs incurred in bringing this action.

28

1    To Relator:

2         (1)    The maximum amount allowed pursuant to O.C.G.A. § 49-4-168 and/or any
                 other applicable provision of law;
3         (2)    Reimbursement for reasonable expenses which Relator incurred in
                 connection with this action;
4         (3)    An award of reasonable attorneys' fees and costs; and
          (4)    Such further relief as this Court deems equitable and just.
5

6                                  **COUNT VI**

7                          **HAWAII FALSE CLAIMS ACT**

8         143.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

9    above as if fully set forth herein.

10        144.   This is a *qui tam* action brought by Relator on behalf of the State of Hawaii to recover

11   treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 et

12   seq.

13        145.   Haw. Rev. Stat. § 661-21(a) provides liability for any person who-

14        (1) knowingly presents, or causes to be presented, to an officer or
          employee of the state a false or fraudulent claim for payment or
15        approval;
          (2) knowingly makes, uses, or causes to be made or used, a false
16        record or statement to get a false or fraudulent claim paid or approved
          by the state;
17        (3) conspires to defraud the state by getting a false or fraudulent claim
          allowed or paid; or
18        (8) is a beneficiary of an inadvertent submission of a false claim to
          the State, who subsequently discovers the falsity of the claim, and
19        fails to disclose the false claim to the State within a reasonable time
          after discovery of the false claim.
20

21        146.   Defendant violated Haw. Rev. Stat. §661-21(a) and knowingly caused false claims

22   to be made, used and presented to the State of Hawaii by its deliberate and systematic violation of

23   federal and state laws, including the FDCA and Anti-Kickback Act, and by virtue of the fact that

24   none of the claims submitted in connection with its conduct were even eligible for reimbursement

25   by the government-funded healthcare programs.

26        147.   The State of Hawaii, by and through the Hawaii Medicaid program and other state

27   healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

28   providers and third party payers in connection therewith.

                                        30
                            **FALSE CLAIMS ACT COMPLAINT**

1   148.   Compliance with applicable Medicare, Medicaid and the various other federal and
2 state laws cited herein was an implied, and upon information and belief, also an express condition
3 of payment of claims submitted to the State of Hawaii in connection with Defendant's conduct.
4 Compliance with applicable Hawaii statutes, regulations and Pharmacy Manuals was also an express
5 condition of payment of claims submitted to the State of Hawaii.

6   149.   Had the State of Hawaii known that false representations were made to both the FDA
7 and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it
8 would not have paid the claims submitted by healthcare providers and third party payers in
9 connection with that conduct.

10   150.   As a result of Defendant's violation of Haw. Rev. Stat. § 661-21(a) the State of
11 Hawaii has been damaged in an amount far in excess of millions of dollars exclusive of interest.

12   151.   Relator is a private citizen with direct and independent knowledge of the allegations
13 of this Complaint, who has brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of
14 themselves and the State of Hawaii.

15   152.   This Court is requested to accept pendant jurisdiction of this related state claim as it
16 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
17 the State of Hawaii in the operation of its Medicaid program.

18   WHEREFORE, Relator respectfully requests this Court to award the following damages to
19 the following parties and against Defendant:

20   To the State of Hawaii:

21   (1)   Three times the amount of actual damages which the State of Hawaii has
             sustained as a result of Defendant's illegal conduct;
22   (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
             false claim which Defendant caused to be presented to the State of Hawaii;
23   (3)   Prejudgment interest; and
     (4)   All costs incurred in bringing this action.

24
     To Relator:
25
     (1)   The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or
26           any other applicable provision of law;
     (2)   Reimbursement for reasonable expenses which Relator incurred in
27           connection with this action;
     (3)   An award of reasonable attorneys' fees and costs; and
28   (4)   Such further relief as this Court deems equitable and just.

31
**FALSE CLAIMS ACT COMPLAINT**

1

## COUNT VII

2

## ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT

3     153.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

4 above as if fully set forth herein.

5     154.    This is a *qui tam* action brought by Relator on behalf of the State of Illinois to recover

6 treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740

7 Ill. Comp. Stat. 175 *et seq.*

8     155.    740 Ill. Comp. Stat. 175/3(a) provides liability for any person who:

9
        (1)    knowingly presents, or causes to be presented, to an officer or
10                  employee of the State of a member of the Guard a false or
                 fraudulent claim for payment or approval;
11         (2)    knowingly makes, uses, or causes to be made or used, a false
                 record or statement to get a false or fraudulent claim paid or
                 approved by the State;
12         (3)    conspires to defraud the State by getting a false or fraudulent
                 claim allowed or paid.
13

14     156.    In addition, 305 Ill. Comp. Stat. 5/8A-3(b) of the Illinois Public Aid Code (Vendor

15 Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any

16 kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for

17 furnishing any item or service for which payment may be made in whole or in part under the Illinois

18 Medicaid program.

19     157.    Defendant violated 305 Ill. Comp. Stat. 5/8A-3(b) by engaging in the conduct

20 described herein.

21     158.    Defendant furthermore violated 740 Ill. Comp. Stat. 175/3(a) and knowingly caused

22 false claims to be made, used and presented to the State of Illinois by its deliberate and systematic

23 violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the Illinois

24 Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims submitted in

25 connection with its conduct were even eligible for reimbursement by the government-funded

26 healthcare programs.

27     159.    The State of Illinois, by and through the Illinois Medicaid program and other state

28 healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

1   providers and third party payers in connection therewith.

2       160.    Compliance with applicable Medicare, Medicaid and the various other federal and
3   state laws cited herein was an implied, and upon information and belief, also an express condition
4   of payment of claims submitted to the State of Illinois in connection with Defendant's conduct.
5   Compliance with applicable Illinois statutes, regulations and Pharmacy Manuals was also an express
6   condition of payment of claims submitted to the State of Illinois.

7       161.    Had the State of Illinois known that false representations were made to both the FDA
8   and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it
9   would not have paid the claims submitted by healthcare providers and third party payers in
10  connection with that conduct.

11      162.    As a result of Defendant's violation of 740 Ill. Comp. Stat. 175/3(a), the State of
12  Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

13      163.    Relator is a private citizen with direct and independent knowledge of the allegations
14  of this Complaint, who has brought this action pursuant to 740 Ill Comp. Stat. 175/3(b) on behalf
15  of herself and the State of Illinois.

16      164.    This Court is requested to accept pendant jurisdiction of this related state claim as it
17  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
18  the State of Illinois in the operation of its Medicaid program.

19      WHEREFORE, Relator respectfully requests this Court to award the following damages to
20  the following parties and against Defendant:

21      To the State of Illinois:

22          (1)  Three times the amount of actual damages which the State of Illinois has
                 sustained as a result of Defendant's conduct;
23          (2)  A civil penalty of not less than $5,500 and not more than $11,000 for each
                 false claim which Defendant caused to be presented to the State of Illinois;
24          (3)  Prejudgment interest; and
            (4)  All costs incurred in bringing this action.
25
    To Relator:
26
            (1)  The maximum amount allowed pursuant to 740 Ill. Comp. Stat.175/4(d)
27               and/or any other applicable provision of law;
            (2)  Reimbursement for reasonable expenses which Relator incurred in
28               connection with this action;
            (3)  An award of reasonable attorneys' fees and costs; and

                                    33
                    **FALSE CLAIMS ACT COMPLAINT**

1      (4)    Such further relief as this Court deems equitable and just.

2
                                    **COUNT VIII**
3

4             **INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT**

5      165.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

       above as if fully set forth herein.
6
       166.    This is a *qui tam* action brought by Relator on behalf of the State of Indiana to recover
7
       treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act,
8
       Indiana Code 5-11-5.5 *et seq.* provides:
9
              Sec. 2.(b) A person who knowingly or intentionally:
10
              (1) presents a false claim to the state for payment or approval;
11            (2) makes or uses a false record or statement to obtain payment or
              approval of a false claim from the state;
12            (3) with intent to defraud the state, delivers less money or property to
              the state than the amount recorded on the certificate or receipt the
13            person receives from the state;
              (4) with intent to defraud the state, authorizes issuance of a receipt
14            without knowing that the information on the receipt is true;
              (5) receives public property as a pledge of an obligation on a debt
15            from an employee who is not lawfully authorized to sell or pledge the
              property;
16            (6) makes or uses a false record or statement to avoid an obligation
              to pay or transmit property to the state;
17            (7) conspires with another person to perform an act described in
              subdivisions (1) through (6); or
18            (8) causes or induces another person to perform an act described in
              subdivisions (1) through (6)...
19

20     167.    In addition, Indiana Code 5-11-5.5 *et seq.* prohibits the solicitation or receipt of any

21     remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in

22     cash or in kind in return for furnishing any item or service for which payment may be made in whole

23     or in part under the Indiana Medicaid program.

24     168.    Defendant violated the Indiana Code 5-11-5.5 *et seq.* by engaging in the conduct

25     described herein.

26     169.    Defendant furthermore violated Indiana Code 5-11-5.5 *et seq.* and knowingly caused

27     false claims to be made, used and presented to the State of Indiana by its deliberate and systematic

28     violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the Indiana

                                          34
                          **FALSE CLAIMS ACT COMPLAINT**

1 Vendor Fraud and Kickback statute, and by virtue of the fact that none of the claims submitted in
2 connection with its conduct were even eligible for reimbursement by the government-funded
3 healthcare programs.

4     170.    The State of Indiana, by and through the Indiana Medicaid program and other state
5 healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
6 providers and third party payers in connection therewith.

7     171.    Compliance with applicable Medicare, Medicaid and the various other federal and
8 state laws cited herein was an implied, and upon information and belief, also an express condition
9 of payment of claims submitted to the State of Indiana in connection with Defendant's conduct.
10 Compliance with applicable Indiana statutes, regulations and Pharmacy Manuals was also an express
11 condition of payment of claims submitted to the State of Indiana.

12     172.    Had the State of Indiana known that false representations were made to both the FDA
13 and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it
14 would not have paid the claims submitted by healthcare providers and third party payers in
15 connection with that conduct.

16     173.    As a result of Defendant's violation of Indiana Code 5-11-5.5 *et seq.*, the State of
17 Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

18     174.    Relator is a private citizen with direct and independent knowledge of the allegations
19 of this Complaint, who have brought this action pursuant to Indiana Code 5-11-5.5 *et seq.* on behalf
20 of themselves and the State of Indiana.

21     175.    This Court is requested to accept pendant jurisdiction of this related state claim as it
22 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
23 the State of Indiana in the operation of its Medicaid program.

24     WHEREFORE, Relator respectfully requests this Court to award the following damages to
25 the following parties and against Defendant:

26     To the State of Indiana:

27         (1)    Three times the amount of actual damages which the State of Indiana has
            sustained as a result of Defendant's conduct;
28         (2)    A Civil penalty of at least five thousand dollars ($5,000) and for up to three
            (3) times the amount of damages sustained by the State of Indiana;

**FALSE CLAIMS ACT COMPLAINT**

1

(3)   Prejudgment interest; and
(4)   All costs incurred in bringing this action.

2

To Relator:

3

(1)   The maximum amount allowed pursuant to Indiana Code 5-11-5.5 *et seq.*
4         and/or any other applicable provision of law;
(2)   Reimbursement for reasonable expenses which Relator incurred in
5         connection with this action;
(3)   An award of reasonable attorneys' fees and costs; and
6   (4)   Such further relief as this Court deems equitable and just.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FALSE CLAIMS ACT COMPLAINT**

1

2                                          **COUNT IX**

3              **LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW**

4         176.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

5    above as if fully set forth herein.

6         177.    This is a *qui tam* action brought by Relator on behalf of the State of Louisiana to

7    recover treble damages and civil penalties under the Louisiana Medical Assistance Programs

8    Integrity Law, La. Rev. Stat. 46: 437.1 *et seq.*

9         178.    La. Rev. Stat. 46: 438.3 provides-

10                      (A) No person shall knowingly present or cause to be presented a
                        false or fraudulent claim;
11                      (B) No person shall knowingly engage in misrepresentation to obtain,
                        or attempt to obtain, payment from medical assistance program funds;
12                      (C) No person shall conspire to defraud, or attempt to defraud, the
                        medical assistance programs through misrepresentation or by
13                      obtaining, or attempting to obtain, payment for a false or fraudulent
                        claim;
14

15        179.    In addition, La. Rev. Stat. 46: 438.2(A) prohibits the solicitation, receipt, offering or

16   payment of any financial inducements, including kickbacks, bribes, rebates, etc., directly or

17   indirectly, overtly or covertly, in cash or in kind, for furnishing healthcare goods or services paid for

18   in whole or in part by the Louisiana medical assistance programs.

19        180.    Defendant violated La. Rev. Stat. 46: 438.2(A) by engaging in the conduct described

20   herein.

21        181.    Defendant furthermore violated La. Rev. Stat. 46: 438.3 and knowingly caused false

22   claims to be made, used and presented to the State of Louisiana by its deliberate and systematic

23   violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and La. Rev.

24   Stat. 456: 438.2(A), and by virtue of the fact that none of the claims submitted in connection with

25   its conduct were even eligible for reimbursement by the government-funded healthcare programs.

26        182.    The State of Louisiana, by and through the Louisiana Medicaid program and other

27   state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

28   healthcare providers and third party payers in connection therewith.

                                              37
                              **FALSE CLAIMS ACT COMPLAINT**

1       183.    Compliance with applicable Medicare, Medicaid and the various other federal and

2 state laws cited herein was an implied, and upon information and belief, also an express condition

3 of payment of claims submitted to the State of Louisiana in connection with Defendant's conduct.

4 Compliance with applicable Louisiana statutes, regulations and Pharmacy Manuals was also an

5 express condition of payment of claims submitted to the State of Louisiana.

6       184.    Had the State of Louisiana known that false representations were made to both the

7 FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

8 it would not have paid the claims submitted by healthcare providers and third party payers in

9 connection with that conduct.

10       185.    As a result of Defendant's violation of La. Rev. Stat. 46: 438.3 the State of Louisiana

11 has been damaged in an amount far in excess of millions of dollars exclusive of interest.

12       186.    Relator is a private citizen with direct and independent knowledge of the allegations

13 of this Complaint, who has brought this action pursuant to La. Rev. Stat. 46: 439.1(A) on behalf of

14 themselves and the State of Louisiana.

15       187.    This Court is requested to accept pendant jurisdiction of this related state claim as it

16 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

17 the State of Louisiana in the operation of its Medicaid program.

18       WHEREFORE, Relator respectfully requests this Court to award the following damages to

19 the following parties and against Defendant:

20       To the State of Louisiana:

21           (1)    Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendant's conduct;

22           (2)    A civil penalty of up to $10,000 for each false claim which Defendant caused to be presented to the State of Louisiana;

23           (3)    Prejudgment interest; and
          (4)    All costs incurred in bringing this action.

24       To Relator:

25  

26           (1)    The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

27           (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

28           (3)    An award of reasonable attorneys' fees and costs; and
          (4)    Such further relief as this Court deems equitable and just.

**FALSE CLAIMS ACT COMPLAINT**

1

## COUNT X

2

## MICHIGAN MEDICAID FALSE CLAIMS ACT

3       188.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

4   above as if fully set forth herein.

5       189.    This is a *qui tam* action brought by Relator on behalf of the State of Michigan to

6   recover treble damages and civil penalties under the Michigan Medicaid False Claims Act. MI ST

7   Ch. 400.603 *et seq.*

8               400.603 provides liability in pertinent part as follows:
                Sec. 3. (1) A person shall not knowingly make or cause to be made a
9               false statement or false representation of a material fact in an
                application for medicaid benefits;
10              (2)A person shall not knowingly make or cause to be made a false
                statement or false representation of a material fact for use in
11              determining rights to a medicaid benefit...

12      190.    In addition, MI ST Ch. 400.604 prohibits the solicitation or receipt of any

13  remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in

14  cash or in kind in return for furnishing any item or service for which payment may be made in whole

15  or in part under the Michigan Medicaid program.

16              Defendant violated MI ST Ch. 400.603 *et seq.* by engaging in the conduct described herein.

17      191.    Defendant furthermore violated, MI ST Ch. 400.603 *et seq.* and knowingly caused

18  false claims to be made, used and presented to the State of Michigan by its deliberate and systematic

19  violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and by virtue

20  of the fact that none of the claims submitted in connection with its conduct were even eligible for

21  reimbursement by the government-funded healthcare programs.

22      192.    The State of Michigan, by and through the Michigan Medicaid program and other

23  state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

24  healthcare providers and third party payers in connection therewith.

25      193.    Compliance with applicable Medicare, Medicaid and the various other federal and

26  state laws cited herein was an implied, and upon information and belief, also an express condition

27  of payment of claims submitted to the State of Michigan in connection with Defendant's conduct.

28  Compliance with applicable Michigan statutes, regulations and Pharmacy Manuals was also an

1    express condition of payment of claims submitted to the State of Michigan.

2        194.    Had the State of Michigan known that false representations were made to both the

3    FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

4    it would not have paid the claims submitted by healthcare providers and third party payers in

5    connection with that conduct.

6        195.    As a result of Defendant's violation of MI ST Ch. 400.603 *et seq.* the State of

7    Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

8        196.    Relator is a private citizen with direct and independent knowledge of the allegations

9    of this Complaint, who have brought this action pursuant to MI ST Ch. 400.603 *et seq.* on behalf of

10   themselves and the State of Michigan.

11       197.    This Court is requested to accept pendant jurisdiction of this related state claim as it

12   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

13   the State of Michigan in the operation of its Medicaid program.

14       WHEREFORE, Relator respectfully requests this Court to award the following damages to

15   the following parties and against Defendant:

16   To the State of Michigan:

17          (1)    Three times the amount of actual damages which the State of Michigan has
                   sustained as a result of Defendant's conduct;
18          (2)    A civil penalty equal to the full amount received for each false claim which
                   Defendant caused to be presented to the State of Michigan;
19          (3)    Prejudgment interest; and
            (4)    All costs incurred in bringing this action.
20
     To Relator:
21
            (1)    The maximum amount allowed pursuant to MI ST Ch. 400.603 *et seq.* and/or
22                 any other applicable provision of law;
            (2)    Reimbursement for reasonable expenses which Relator incurred in
23                 connection with this action;
            (3)    An award of reasonable attorneys' fees and costs; and
24          (4)    Such further relief as this Court deems equitable and just.

25
                                    **COUNT XI**
26
                          **MONTANA FALSE CLAIMS ACT**
27                     **MONT. CODE ANN. § 17-8-403(1)(a)-(b)**

28       198.    Plaintiff realleges and incorporates by reference the allegations contained in

                                          40

1   paragraphs 1 through 88 above as if fully set forth herein.

2       199.   This is a qui tam action brought by Relator on behalf of the State of Montana to

3   recover treble damages and penalties under the Montana False Claims Act, Mont. Code Ann § 17-8-

4   403(1)(a)-(b).

5       200.   17-8-403 provides liability for any person who:

6           (a) knowingly presenting or causing to be presented to an officer or employee
            of the governmental entity a false claim for payment or approval;
7           (b) knowingly making, using, or causing to be made or used a false record or
            statement to get a false claim paid or approved by the governmental entity;
8           (c) conspiring to defraud the governmental entity by getting false claim
            allowed or paid by the governmental entity.
9           (h) as a beneficiary of an inadvertent submission of a false claim to the
            governmental entity, subsequently discovering the falsity of the claim and
10          failing to disclose the false claim to the governmental entity within
            a reasonable time after discovery of the false claim.
11

12      201.   Compliance with applicable Medicare, Medicaid and the various other federal and

13  state laws cited herein was an implied, and upon information and belief, also an express condition

14  of payment of claims submitted to the State of Montana in connection with Defendant's conduct.

15  Compliance with applicable Montana statutes, regulations and Pharmacy Manuals was also an

16  express condition of payment of claims submitted to the State of Montana.

17      202.   Had the State of Montana known that false representations were made to both the

18  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

19  it would not have paid the claims submitted by healthcare providers and third party payers in

20  connection with that conduct.

21      203.   The Montana State Government, unaware of the falsity of the records, statements and

22  claims made, used, presented or caused to be made, used or presented by Defendant, paid and

23  continues to pay the claims that would not be paid but for Defendant's conduct.

24      204.   By reason of the Defendant's acts, the State of Montana has been damaged, and

25  continues to be damaged, in substantial amounts to be determined at trial.

26      205.   The State of Montana is entitled to the maximum penalty of $10,000 for each and

27  every false or fraudulent claim, record or statement made, used, presented or caused to be made, used

28  or presented by Defendant.

1    WHEREFORE, Relator respectfully requests this Court to award the following damages to

2  the following parties and against Defendant:

3    To the State of Montana:

4        (1)    Not less than two times and not more than three times the amount of actual
                damages which the State of Montana has sustained as a result of Defendant's

5               conduct;
         (2)    A civil penalty of up to $10,000 for each false claim which Defendant caused

6               to be presented to the State of Montana;
         (3)    Prejudgment interest; and

7        (4)    All costs incurred in bringing this action.

8    To Relator:

9        (1)    The maximum amount allowed pursuant to Montana Code Ann. §
                17-8-403(1)(A)-(B). and/or any other applicable provision of law;

10       (2)    Reimbursement for reasonable expenses which Relator incurred in
                connection with this action;

11       (3)    An award of reasonable attorneys' fees and costs; and
         (4)    Such further relief as this Court deems equitable and just.

12

13                              **COUNT XII**

14                       **NEVADA FALSE CLAIMS ACT**

15    206.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

16  above as if fully set forth herein.

17    207.    This is a *qui tam* action brought by Relator on behalf of the State of Nevada to

18  recover treble damages and civil penalties under the Nevada False Claims Act, Nev. Rev. Stat. §

19  357.010, *et. seq.*

20    208.    Nev. Rev. Stat. § 357.040(1) provides liability for any person who-

21        (a) knowingly presents or causes to be presented a false claim for
            payment or approval;

22        (b) knowingly makes or uses, or causes to be made or used, a false
            record or statement to obtain payment or approval of a false claim

23        (c) conspires to defraud by obtaining allowance or payment of a false
            claim;

24        (h) is a beneficiary of an inadvertent submission of a false claim and,
            after discovering the falsity of the claim, fails to disclose the falsity

25        to the state or political subdivision within a reasonable time.

26    209.    In addition, Nev. Rev. Stat. § 422.560 prohibits the solicitation, acceptance or receipt

27  of anything of value in connection with the provision of medical goods or services for which

28  payment may be made in whole or in part under the Nevada Medicaid program.

1      210.    Defendant violated Nev. Rev. Stat. § 422.560 by engaging in the conduct described
2   herein.

3      211.    Defendant furthermore violated Nev. Rev. Stat.§ 357.040(1) and knowingly caused
4   false claims to be made, used and presented to the State of Nevada by its deliberate and systematic
5   violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Nev. Rev.
6   Stat. § 422.560, and by virtue of the fact that none of the claims submitted in connection with its
7   conduct were even eligible for reimbursement by the government-funded healthcare programs.

8      212.    The State of Nevada, by and through the Nevada Medicaid program and other state
9   healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare
10   providers and third party payers in connection therewith.

11      213.    Compliance with applicable Medicare, Medicaid and the various other federal and
12   state laws cited herein was an implied, and upon information and belief, also an express condition
13   of payment of claims submitted to the State of Nevada in connection with Defendant's conduct.
14   Compliance with applicable Nevada statutes, regulations and Pharmacy Manuals was also an express
15   condition of payment of claims submitted to the State of Nevada.

16      214.    Had the State of Nevada known that false representations were made to both the FDA
17   and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it
18   would not have paid the claims submitted by healthcare providers and third party payers in
19   connection with that conduct.

20      215.    As a result of Defendant's violation of Nev. Rev. Stat. § 357.040(1) the State of
21   Nevada has been damaged in an amount far in excess of millions of dollars exclusive of interest.

22      216.    Relator is a private citizen with direct and independent knowledge of the allegations
23   of this Complaint, who has brought this action pursuant to Nev. Rev. Stat. § 357.080(1) on behalf
24   of themselves and the State of Nevada.

25      217.    This Court is requested to accept pendant jurisdiction of this related state claim as it
26   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
27   the State of Nevada in the operation of its Medicaid program.

28          WHEREFORE, Relator respectfully requests this Court to award the following damages to

**FALSE CLAIMS ACT COMPLAINT**

1  the following parties and against Defendant:

2  To the State of Nevada:

3      (1)   Three times the amount of actual damages which the State of Nevada has
    sustained as a result of Defendant's conduct;

4      (2)   A civil penalty of not less than $2,000 and not more than $10,000 for each
    false claim which Defendant caused to be presented to the State of Nevada;

5      (3)   Prejudgment interest; and
    (4)   All costs incurred in bringing this action..

6  To Relator:

7

8      (1)   The maximum amount allowed pursuant to Nev. Rev. Stat. § 357.210 and/or
    any other applicable provision of law;

9      (2)   Reimbursement for reasonable expenses which Relator incurred in
    connection with this action;

10      (3)   An award of reasonable attorneys' fees and costs; and
    (4)   Such further relief as this Court deems equitable and just.

11

12  ## COUNT XIII

13  ## THE NEW HAMPSHIRE HEALTH CARE FALSE CLAIMS ACT

218.  Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

14  above as if fully set forth herein.

15  219.  This is a *qui tam* action brought by Relator on behalf of the State of New Hampshire

16  to recover treble damages and civil penalties under the New Hampshire Health Care False Claims

17  Law, N.H. Rev.Stat. Ann§167:61-b *et seq.* provides:

18  220.  1. Any person shall be liable who...

19

20  (a) knowingly presents, or causes to be presented, to an officer or employee of the
department a false or fraudulent claim for payment or approval;

21  (b) knowingly makes, uses, or causes to be made or used, a false
record or statement to get a false or fraudulent claim paid or approved
by the department;

22  (c) conspires to defraud the State by getting a false or fraudulent
claim allowed or paid.

23  (f) Is a beneficiary of an inadvertent submission of a false claim to the department,
who subsequently discovers the falsity of the claim, and fails to disclose the false

24  claim to the department within a reasonable time after discovery of the false claim

25  221.  In addition, N.H. Rev.Stat. Ann. prohibits the solicitation or receipt of any

26  remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in

27  cash or in kind in return for furnishing any item or service for which payment may be made in whole

28  or in part under the New Hampshire Medicaid program.

1    222.    Defendant violated the N.H. Rev.Stat. Ann by engaging in the conduct described
2   herein.

3    223.    Defendant furthermore violated N.H. Rev.Stat. Ann. §167:61-b, and knowingly
4   caused false claims to be made, used and presented to the State of New Hampshire by its deliberate
5   and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act,
6   and the New Hampshire Vendor Fraud and Kickback statute, and by virtue of the fact that none of
7   the claims submitted in connection with its conduct were even eligible for reimbursement by the
8   government-funded healthcare programs.

9    224.    The State of New Hampshire, by and through the New Hampshire Medicaid program
10   and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted
11   by healthcare providers and third party payers in connection therewith.

12    225.    Compliance with applicable Medicare, Medicaid and the various other federal and
13   state laws cited herein was an implied, and upon information and belief, also an express condition
14   of payment of claims submitted to the State of New Hampshire in connection with Defendant's
15   conduct. Compliance with applicable New Hampshire statutes, regulations and Pharmacy Manuals
16   was also an express condition of payment of claims submitted to the State of New Hampshire.

17    226.    Had the State of New Hampshire known that false representations were made to both
18   the FDA and to practitioners about the true state of affairs regarding the safety and efficacy of
19   Cymbalta, it would not have paid the claims submitted by healthcare providers and third party payers
20   in connection with that conduct.

21    227.    As a result of Defendant's violation of N.H. Rev.Stat. Ann. §167:61-b *et seq.*, the
22   State of New Hampshire has been damaged in an amount far in excess of millions of dollars
23   exclusive of interest.

24    228.    Relator is a private citizen with direct and independent knowledge of the allegations
25   of this Complaint, who have brought this action pursuant to N.H. Rev.Stat. Ann. §167:61-b *et seq.*
26   on behalf of themselves and the State of New Hampshire.

27    229.    This Court is requested to accept pendant jurisdiction of this related state claim as it
28   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

1  the State of New Hampshire in the operation of its Medicaid program.

2        WHEREFORE, Relator respectfully requests this Court to award the following damages to

3  the following parties and against Defendant:

4        To the State of New Hampshire:

5              (1)    Three times the amount of actual damages which the State of New Hampshire
   has sustained as a result of Defendant's conduct;

6              (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
   false claim which Defendant caused to be presented to the State of New

7                     Hampshire;

            (3)    Prejudgment interest; and

8              (4)    All costs incurred in bringing this action.

9        To Relator:

10             (1)    The maximum amount allowed pursuant to N.H. Rev. Stat. Ann § 167:61-b
   *et seq.* and/or any other applicable provision of law;

11             (2)    Reimbursement for reasonable expenses which Relator incurred in
   connection with this action;

12             (3)    An award of reasonable attorneys' fees and costs; and

            (4)    Such further relief as this Court deems equitable and just.

13

14                                **COUNT XIV**

15                 **NEW JERSEY FALSE CLAIMS ACT**

16        230.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

17  above as if fully set forth herein.

18        231.    This is a *qui tam* action brought by Relator on behalf of the State of New Jersey to

19  recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. §

20  2A:32C-1 *et seq.* (2008) *et seq.*

21        232.    N.J. Stat. § 2A:32C-3 provides liability for any person who:

22              (a)    knowingly presents, or causes to be presented, to an
   employee, officer, or agent of the State or to any contractor,

23                    grantee, or other recipient of State funds, a false or fraudulent
   claim for payment or approval;

24              (b)    knowingly makes, uses, or causes to be made or used a false
   record or statement to get a false or fraudulent claim paid or

25                    approved by the State;

            (c)    conspires to defraud the State by getting a false or fraudulent

26                    claim allowed or paid by the State.

27        233.    In addition, Section 17 of P.L. 1968, c.413 (C.30:4D-17) of the New Jersey False

28  Claims Act prohibits the solicitation, offer or receipt of any remuneration, including any kickback,

1    rebate or bribe in connection with the furnishing of items or services for which payment is or may
2    be made in whole or in part under the New Jersey Medicaid program.

3         234.    Defendant violated Section 17 of P.L. 1968, c.413 (C.30:4D-17) by engaging in the
4    conduct described herein.

5         235.    Defendant furthermore violated N.J. Stat. § 2A:32C-1 *et seq.* and knowingly caused
6    false claims to be made, used and presented to the State of New Jersey by its deliberate and
7    systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and
8    the New Jersey False Claims Act and Kickback statute, and by virtue of the fact that none of the
9    claims submitted in connection with its conduct were even eligible for reimbursement by the
10    government-funded healthcare programs.

11        236.    The State of New Jersey, by and through the New Jersey Medicaid program and other
12    state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by
13    healthcare providers and third party payers in connection therewith.

14        237.    Compliance with applicable Medicare, Medicaid and the various other federal and
15    state laws cited herein was an implied, and upon information and belief, also an express condition
16    of payment of claims submitted to the State of New Jersey in connection with Defendant's conduct.
17    Compliance with applicable New Jersey statutes, regulations and Pharmacy Manuals was also an
18    express condition of payment of claims submitted to the State of New Jersey.

19        238.    Had the State of New Jersey known that false representations were made to both the
20    FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,
21    it would not have paid the claims submitted by healthcare providers and third party payers in
22    connection with that conduct.

23        239.    As a result of Defendant's violation of N.J. Stat. § 2A:32C-1 *et seq.*, the State of New
24    Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

25        240.    Relator is a private citizen with direct and independent knowledge of the allegations
26    of this Complaint, who has brought this action pursuant to N.J. Stat. § 2A:32C-1 *et seq.* on behalf
27    of herself and the State of New Jersey.

28        241.    This Court is requested to accept pendant jurisdiction of this related state claim as it

1  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

2  the State of New Jersey in the operation of its Medicaid program.

3      WHEREFORE, Relator respectfully requests this Court to award the following damages to

4  the following parties and against Defendant:

5      To the State of New Jersey:

6          (1)  Three times the amount of actual damages which the State of New Jersey has
              sustained as a result of Defendant's conduct;
7          (2)  A civil penalty of not less than and not more than the civil penalty allowed
              under the federal False Claims Act (31 U.S.C. s.3729 *et seq.*) which
8              Defendant caused to be presented to the State of New Jersey;
           (3)  Prejudgment interest; and
9          (4)  All costs incurred in bringing this action.

10     To Relator:

11         (1)  The maximum amount allowed pursuant to N.J. Stat. § 2A:32C-1 *et seq.*
              and/or any other applicable provision of law;
12         (2)  Reimbursement for reasonable expenses which Relator incurred in
              connection with this action;
13         (3)  An award of reasonable attorneys' fees and costs; and
           (4)  Such further relief as this Court deems equitable and just.
14

15                                    COUNT XV

16     NEW MEXICO MEDICAID FALSE CLAIMS ACT AND NEW MEXICO FRAUD
                         AGAINST TAXPAYERS ACT
17
       242.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88
18
   above as if fully set forth herein.
19
       243.   This is a *qui tam* action brought by Relator on behalf of the State of New Mexico to
20
   recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act N.M.
21
   Stat. Ann§§ 27-14-1 *et seq.*
22
       244.   Section 4 provides liability in pertinent part as follows:
23            A person ...shall be liable...if the person:
              A. presents, or causes to be presented, to the state a claim for payment
24            under the medicaid program knowing that such claim is false or
              fraudulent;
25            B. presents, or causes to be presented, to the state a claim for payment
              under the medicaid program knowing that the person receiving a
26            medicaid benefit or payment is not authorized or is not eligible for a
              benefit under the medicaid program;
27            C. makes, uses or causes to be made or used a record or statement to
              obtain a false or fraudulent claim under the medicaid program paid
28            for or approved by the state knowing such record or statement is
              false;

                                        48
                           FALSE CLAIMS ACT COMPLAINT

> D. conspires to defraud the state by getting a claim allowed or paid under the medicaid program knowing that such claim is false or fraudulent;

245.    It is also brought by Relator on behalf of the State of New Mexico to recover treble damages and civil penalties under the New Mexico Fraud Against Taxpayers Act N.M. Stat. Ann § 44-9-1 *et seq.* provides liablity in pertinent part as follows:

246.    § 44-9-3(A) A person shall not:

> (1) knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee or other recipient of state funds a false or fraudulent claim for payment or approval;
> (2) knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;
> (3) conspire to defraud the state by obtaining approval or payment on a false or fraudulent claim;

247.    In addition, N.M. Stat. Ann§§ 30-44-7 *et seq.* prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the New Mexico Medicaid program.

248.    Defendant violated N.M. Stat. Ann§§ 30-44-7 et seq by engaging in the conduct described herein.

249.    Defendant furthermore violated, N.M. Stat. Ann§§ 27-14-1 *et seq.* and knowingly caused false claims to be made, used and presented to the State of New Mexico by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

250.    The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

251.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendant's conduct.

1  Compliance with applicable New Mexico statutes, regulations and Pharmacy Manuals was also an
2  express condition of payment of claims submitted to the State of New Mexico.

3      252.    Had the State of New Mexico known that false representations were made to both the
4  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,
5  it would not have paid the claims submitted by healthcare providers and third party payers in
6  connection with that conduct.

7      253.    As a result of Defendant's violation of N.M. Stat. Ann§§ 27-14-1 *et seq.* the State of
8  New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of
9  interest.

10      254.    Relator is a private citizen with direct and independent knowledge of the allegations
11  of this Complaint, who have brought this action pursuant to N.M. Stat. Ann§§ 27-14-1 *et seq.* on
12  behalf of themselves and the State of New Mexico.

13      255.    This Court is requested to accept pendant jurisdiction of this related state claim as it
14  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
15  the State of New Mexico in the operation of its Medicaid program.

16      WHEREFORE, Relator respectfully requests this Court to award the following damages to
17  the following parties and against Defendant:

18      To the State of New Mexico:

19          (1)    Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendant's conduct;
20          (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New
21              Mexico;
        (3)    Prejudgment interest; and
22          (4)    All costs incurred in bringing this action.

23      To Relator:

24          (1)    The maximum amount allowed pursuant to N.M. Stat. Ann§§ 27-14-1 *et seq.* and/or any other applicable provision of law;
25          (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;
26          (3)    An award of reasonable attorneys' fees and costs; and
        (4)    Such further relief as this Court deems equitable and just.
27

28  **COUNT XVI**

**FALSE CLAIMS ACT COMPLAINT**

1    **NEW YORK FALSE CLAIMS ACT**

2    256.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

3    above as if fully set forth herein.

4    257.    This is a *qui tam* action brought by Relator on behalf of the State of New York to

5    recover treble damages and civil penalties under the New York False Claims Act, 2007 N.Y. Laws

6    58, Section 39, Article XIII

7    258.    Section 189 provides liability for any person who:

8            1.(a)    knowingly presents, or causes to be presented, to any
              employee, officer or agent of the state or local government, a false or
9            fraudulent claim for payment or approval;
              1. (b)   knowingly makes, uses, or causes to be made or used, a false
10           record or statement to get a false or fraudulent claim paid or approved
              by the state or local government;
11           1. (c) conspires to defraud the State by getting a false or fraudulent
              claim allowed or paid.
12

13   259.    In addition, the New York State Consolidated Laws prohibits the solicitation or

14   receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly

15   or covertly, in cash or in kind in return for furnishing any item or service for which payment may be

16   made in whole or in part under the New York Medicaid program.

17   260.    Defendant violated the New York State Consolidated Laws by engaging in the

18   conduct described herein.

19   261.    Defendant furthermore violated, 2007 N.Y. Laws 58, Section 39, Article XIII, and

20   knowingly caused false claims to be made, used and presented to the State of New York by its

21   deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

22   Kickback Act, and the New York Vendor Fraud and Kickback statute, and by virtue of the fact that

23   none of the claims submitted in connection with its conduct were even eligible for reimbursement

24   by the government-funded healthcare programs.

25   262.    The State of New York, by and through the New York Medicaid program and other

26   state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

27   healthcare providers and third party payers in connection therewith.

28   263.    Compliance with applicable Medicare, Medicaid and the various other federal and

51
**FALSE CLAIMS ACT COMPLAINT**

1  state laws cited herein was an implied, and upon information and belief, also an express condition
2  of payment of claims submitted to the State of New York in connection with Defendant's conduct.
3  Compliance with applicable New York statutes, regulations and Pharmacy Manuals was also an
4  express condition of payment of claims submitted to the State of New York.

5      264.    Had the State of New York known that false representations were made to both the
6  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,
7  it would not have paid the claims submitted by healthcare providers and third party payers in
8  connection with that conduct.

9      265.    As a result of Defendant's violation of 2007 N.Y. Laws 58, Section 39, Article XIII,
10  the State of New York has been damaged in an amount far in excess of millions of dollars exclusive
11  of interest.

12      266.    Relator is a private citizen with direct and independent knowledge of the allegations
13  of this Complaint, who have brought this action pursuant to 2007 N.Y. Laws 58, Section 39, Article
14  XIII, on behalf of themselves and the State of New York.

15      267.    This Court is requested to accept pendant jurisdiction of this related state claim as it
16  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
17  the State of New York in the operation of its Medicaid program.

18      WHEREFORE, Relator respectfully requests this Court to award the following damages to
19  the following parties and against Defendant:

20      To the State of New York:

21          (1)    Three times the amount of actual damages which the State of New York has
                   sustained as a result of Defendant's conduct;
22          (2)    A civil penalty of not less than $6,000 and not more than $12,000 for each
                   false claim which Defendant caused to be presented to the State of New
23                 York;
            (3)    Prejudgment interest; and
24          (4)    All costs incurred in bringing this action.

25      To Relator:

26          (1)    The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section 39,
                   Article XIII, and/or any other applicable provision of law;
27          (2)    Reimbursement for reasonable expenses which Relator incurred in
                   connection with this action;
28          (3)    An award of reasonable attorneys' fees and costs; and
            (4)    Such further relief as this Court deems equitable and just.

**FALSE CLAIMS ACT COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT XVII

### OKLAHOMA MEDICAID FALSE CLAIMS ACT

268.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88 above as if fully set forth herein.

269.    This is a *qui tam* action brought by Relator on behalf of the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act 63 Okl. St. § 5053 (2008) *et seq.*

270.    63 Okl. St. § 5053.1 (2)(B) provides liability for any person who:

(1)    knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

271.    In addition, 56 Okl. St. § 1005 (2008) of the Oklahoma Medicaid Program Integrity Act prohibits the solicitation or receipt of any benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program.

272.    Defendant violated 56 Okl. St. § 1005 *et seq.* by engaging in the conduct described herein.

273.    Defendant furthermore violated 63 Okl. St. § 5053.1 *et seq.* and knowingly caused false claims to be made, used and presented to the State of Oklahoma by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the Oklahoma Medicaid Program Integrity Act and Kickback statute, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

274.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

1    275.    Compliance with applicable Medicare, Medicaid and the various other federal and
2  state laws cited herein was an implied, and upon information and belief, also an express condition
3  of payment of claims submitted to the State of Oklahoma in connection with Defendant's conduct.
4  Compliance with applicable Oklahoma statutes, regulations and Pharmacy Manuals was also an
5  express condition of payment of claims submitted to the State of Oklahoma.

6    276.    Had the State of Oklahoma known that false representations were made to both the
7  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,
8  it would not have paid the claims submitted by healthcare providers and third party payers in
9  connection with that conduct.

10    277.    As a result of Defendant's violation of 63 Okl. St. § 5053.1 *et seq.*, the State of
11  Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

12    278.    Relator is a private citizen with direct and independent knowledge of the allegations
13  of this Complaint, who has brought this action pursuant to 63 Okl. St. § 5053.1 *et seq.* on behalf of
14  herself and the State of Oklahoma.

15    279.    This Court is requested to accept pendant jurisdiction of this related state claim as it
16  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
17  the State of Oklahoma in the operation of its Medicaid program.

18    WHEREFORE, Relator respectfully requests this Court to award the following damages to
19  the following parties and against Defendant:

20    To the State of Oklahoma:

21    (1)   Three times the amount of actual damages which the State of Oklahoma has
            sustained as a result of Defendant's conduct;
22    (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
            false claim which Defendant caused to be presented to the State of
23          Oklahoma;
      (3)   Prejudgment interest; and
24    (4)   All costs incurred in bringing this action.

25    To Relator:

26    (1)   The maximum amount allowed pursuant to 63 Okl. St. § 5053.1 *et seq.*
            and/or any other applicable provision of law;
27    (2)   Reimbursement for reasonable expenses which Relator incurred in
            connection with this action;
28    (3)   An award of reasonable attorneys' fees and costs; and
      (4)   Such further relief as this Court deems equitable and just.

**FALSE CLAIMS ACT COMPLAINT**

1

2                                    **COUNT XVIII**

3                    **RHODE ISLAND STATE FALSE CLAIMS ACT**

4          280.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

5    above as if fully set forth herein.

6          281.    This is a *qui tam* action brought by Relator on behalf of the State of Rhode Island to

7    recover treble damages and civil penalties under the Rhode Island State False Claims Act R.I.Gen.

8    Laws § 9-1.1-1 (2008) *et seq.*

9          282.    R.I. Gen. Laws § 9-1.1-3 provides liability for any person who:

10                  (1)    knowingly presents, or causes to be presented, to an officer or
                           employee of the State or a member of the Guard a false or
11                         fraudulent claim for payment or approval;
                    (2)    knowingly makes, uses, or causes to be made or used, a false
12                         record or statement to get a false or fraudulent claim paid or
                           approved by the State;
13                  (3)    conspires to defraud the State by getting a false or fraudulent
                           claim allowed or paid.
14

15         283.    In addition, R.I. Gen. Laws § 40-8.2-3(2)(i) prohibits the solicitation, receipt, offer

16   or payment of any remuneration, including any kickback, bribe, or rebate, directly or indirectly,

17   overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment

18   may be made in whole or in part under the Rhode Island Medicaid program.

19         284.    Defendant violated R.I. Gen. Laws § 40-8.2-3 *et seq.* by engaging in the conduct

20   described herein.

21         285.    Defendant furthermore violated R.I.Gen. Laws § 9-1.1-1 and knowingly caused false

22   claims to be made, used and presented to the State of Rhode Island by its deliberate and systematic

23   violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the Rhode

24   Island General Laws and Kickback statute, and by virtue of the fact that none of the claims submitted

25   in connection with its conduct were even eligible for reimbursement by the government-funded

26   healthcare programs.

27         286.    The State of Rhode Island, by and through the Rhode Island Medicaid program and

28   other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

                                              55
                              **FALSE CLAIMS ACT COMPLAINT**

1 | healthcare providers and third party payers in connection therewith.

2      287.   Compliance with applicable Medicare, Medicaid and the various other federal and
3 | state laws cited herein was an implied, and upon information and belief, also an express condition
4 | of payment of claims submitted to the State of Rhode Island in connection with Defendant's conduct.
5 | Compliance with applicable Rhode Island statutes, regulations and Pharmacy Manuals was also an
6 | express condition of payment of claims submitted to the State of Rhode Island.

7      288.   Had the State of Rhode Island known that false representations were made to both
8 | the FDA and to practitioners about the true state of affairs regarding the safety and efficacy of
9 | Cymbalta, it would not have paid the claims submitted by healthcare providers and third party payers
10 | in connection with that conduct.

11      289.   As a result of Defendant's violation of R.I. Gen. Laws § 9-1.1-1, the State of Rhode
12 | Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

13      290.   Relator is a private citizen with direct and independent knowledge of the allegations
14 | of this Complaint, who has brought this action pursuant to R.I. Gen. Laws § 9-1.1-1 *et seq.* on behalf
15 | of herself and the State of Rhode Island.

16      291.   This Court is requested to accept pendant jurisdiction of this related state claim as it
17 | is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
18 | the State of Rhode Island in the operation of its Medicaid program.

19      WHEREFORE, Relator respectfully requests this Court to award the following damages to
20 | the following parties and against Defendant:

21      To the State of Rhode Island:

22         (1)   Three times the amount of actual damages which the State of Rhode Island
has sustained as a result of Defendant's conduct;
23         (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
false claim which Defendant caused to be presented to the State of Rhode
24              Island;
        (3)   Prejudgment interest; and
25         (4)   All costs incurred in bringing this action.

26      To Relator:

27         (1)   The maximum amount allowed pursuant to R.I. Gen. Laws § 9-1.1-1 and/or
any other applicable provision of law;
28         (2)   Reimbursement for reasonable expenses which Relator incurred in
connection with this action;

**FALSE CLAIMS ACT COMPLAINT**

1

       (3)    An award of reasonable attorneys' fees and costs; and
       (4)    Such further relief as this Court deems equitable and just.

2

3

## COUNT XVIX

4

## TENNESSEE FALSE CLAIMS ACT

5        292.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

6  above as if fully set forth herein.

7        293.   This is a *qui tam* action brought by Relator on behalf of the State of Tennessee to

8  recover treble damages and civil penalties under the Tennessee False Claims Act, Tenn. Code Ann.

9  § 4-18-101 *et seq.* and Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

10       294.   § 4-18-103(a) provides liability for any person who-

11

     (1) Knowingly presents, or causes to be presented to an officer or
     employee of the state..., a false claim for payment or approval;

12

     (2) Knowingly makes, uses, or causes to be made or used, a false
     record or statement to get a false claim paid or approved by the state

13

     or by any political subdivision;
     (3) Conspires to defraud the state or any political subdivision by

14

     getting a claim allowed or paid by the state of by any political
     subdivision.

15

     § 71-5-182(a)(1) provides liability for any person who-

16

17

     (A) presents, or causes to be presented to the state, a claim for
     payment under the Medicaid program knowing such claim is false or
     fraudulent;

18

     (B) makes or uses, or causes to be made or used, a record or
     statement to get a false or fraudulent claim under the Medicaid

19

     program paid for or approved by the state knowing such record or
     statement is false;

20

     (C) conspires to defraud the State by getting a claim allowed or paid
     under the Medicaid program knowing such claim is false or

21

     fraudulent.

22

23

       295.   Defendant violated Tenn. Code Ann. § 4-18-103(a) and § 71-5-1 82(a)(1) and

knowingly caused false claims to be made, used and presented to the State of Tennessee by its

24

deliberate and systematic violation of federal and state laws, including the FDCA and Anti-Kickback

25

Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were

26

even eligible for reimbursement by the government-funded healthcare programs.

27

       296.   The State of Tennessee, by and through the Tennessee Medicaid program and other

28

state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

## FALSE CLAIMS ACT COMPLAINT

1   healthcare providers and third party payers in connection therewith.

2      297.   Compliance with applicable Medicare, Medicaid and the various other federal and
3   state laws cited herein was an implied, and upon information and belief, also an express condition
4   of payment of claims submitted to the State of Tennessee in connection with Defendant's conduct.
5   Compliance with applicable Tennessee statutes, regulations and Pharmacy Manuals was also an
6   express condition of payment of claims submitted to the State of Tennessee.

7      298.   Had the State of Tennessee known that false representations were made to both the
8   FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,
9   it would not have paid the claims submitted by healthcare providers and third party payers in
10   connection with that conduct.

11      299.   As a result of Defendant's violation of Tenn. Code Ann. § 4-18-103(a) and § 71-5-
12   182(a)(1), the State of Tennessee has been damaged in an amount far in excess of millions of dollars
13   exclusive of interest.

14      300.   Relator is a private citizen with direct and independent knowledge of the allegations
15   of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 4-18-103(a) and § 71-
16   5-183(a)(1) on behalf of themselves and the State of Tennessee.

17      301.   This Court is requested to accept pendant jurisdiction of this related state claim as it
18   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
19   the State of Tennessee in the operation of its Medicaid program.

20      WHEREFORE, Relator respectfully requests this Court to award the following damages to
21   the following parties and against Defendant:

22      To the State of Tennessee:

23          (1)   Three times the amount of actual damages which the State of Tennessee has
sustained as a result of Defendant's conduct;
24          (2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
false claim which Defendant caused to be presented to the State of
25              Tennessee;
         (3)   Prejudgment interest; and
26          (4)   All costs incurred in bringing this action.

27      To Relator:

28          (1)   The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(c)
and/or any other applicable provision of law;

**FALSE CLAIMS ACT COMPLAINT**

1           (2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

2           (3)    An award of reasonable attorneys' fees and costs; and

          (4)    Such further relief as this Court deems equitable and just.

3

4                                **COUNT XX**

5                **TEXAS MEDICAID FRAUD PREVENTION LAW**

6      302.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

7 above as if fully set forth herein.

8      303.   This is a *qui tam* action brought by Relator on behalf of the State of Texas to recover

9 double damages and civil penalties under Tex. Hum. Res. Code § 36.001 *et seq.*

10      304.   Tex. Hum. Res. Code § 36.002 provides liability for any person who-

11           (1)    knowingly or intentionally makes or causes to be made a false statement or misrepresentation of a material fact:

12                  (a) on an application for a contract, benefit, or payment under the Medicaid program; or

13                  (b) that is intended to be used to determine its eligibility for a benefit

14

          (2)    knowingly or intentionally concealing or failing to disclose an event:

15                  (A) that the person knows affects the initial or

16                  continued right to a benefit or payment under the Medicaid program of.

17                        (i)    the person, or

                       (ii)   another person on whose

18                      behalf the person has applied for a benefit or payment or is receiving a

19                      benefit or payment; and

                 (B) to permit a person to receive a benefit or payment

20                  that is not authorized or that is greater than the payment or benefit that is authorized;

21

          (4)    knowingly or intentionally makes, causes to be made, induces,

22                  or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

23                  (B) information required to be provided by a federal or state law, rule, regulation, or provider agreement

24                  pertaining to the Medicaid program;

25           (5)    ... knowingly or intentionally charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid

26                  program, a gift, money, a donation, or other consideration as a condition to the provision of a service or continued service

27                  to a Medicaid recipient if the cost of the service provided to the Medicaid recipient is paid for, in whole or in part, under

28                  the Medicaid program.

**FALSE CLAIMS ACT COMPLAINT**

1         305.    Defendant violated Tex. Hum. Res. Code § 36.002 and knowingly caused false

2  claims to be made, used and presented to the State of Texas by its deliberate and systematic

3  violation of federal and state laws, including the FDCA, federal Anti-kickback Act and § 36.002, and

4  by virtue of the fact that none of the claims submitted in connection with its conduct were even

5  eligible for reimbursement by the government-funded healthcare programs.

6         306.    The State of Texas, by and through the Texas Medicaid program and other state

7  healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare

8  providers and third party payers in connection therewith.

9         307.    Compliance with applicable Medicare, Medicaid and the various other federal and

10  state laws cited herein was an implied, and upon information and belief, also an express condition

11  of payment of claims submitted to the State of Texas in connection with Defendant's conduct.

12  Compliance with applicable Texas statutes, regulations and Pharmacy Manuals was also an express

13  condition of payment of claims submitted to the State of Texas.

14         308.    Had the State of Texas known that false representations were made to both the FDA

15  and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta, it

16  would not have paid the claims submitted by healthcare providers and third party payers in

17  connection with that conduct.

18         309.    As a result of Defendant's violation of Tex. Hum. Res. Code § 36.002, the State of

19  Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

20         310.    Defendant did not, within 30 days after it first obtained information as to such

21  violation, furnish such information to officials of the State responsible for investigating false claims

22  violation, did not otherwise fully cooperate with any investigation of the violation, and have not

23  otherwise furnished information to the State regarding the claims for reimbursement at issue.

24         311.    Relator is a private citizen with direct and independent knowledge of the allegations

25  of this Complaint, who has brought this action pursuant to Tex. Hum. Res. Code § 36.101 on behalf

26  of themselves and the State of Texas.

27         312.    This Court is requested to accept pendant jurisdiction of this related state claim as it

28  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

1  the State of Texas in the operation of its Medicaid program.

2      WHEREFORE, Relator respectfully requests this Court to award the following damages to

3  the following parties and against Defendant:

4      To the State of Texas:

5          (1)    Two times the amount of actual damages which the State of Texas has
                  sustained as a result of Defendant's conduct;
6          (2)    A civil penalty of not less than $5,000 or more than $15,000 pursuant to Tex.
                  Hum.. Res. Code § 36.025(a)(3) for each false claim which Defendant cause
7                 to be presented to the state of Texas;
           (3)    Prejudgment interest; and
8          (4)    All costs incurred in bringing this action.

9      To Relator:

10         (1)    The maximum amount allowed pursuant to Tex. Hum. Res. Code § 36.110,
                  and/or any other applicable provision of law;
11         (2)    Reimbursement for reasonable expenses which Relator incurred in
                  connection with this action;
12         (3)    An award of reasonable attorneys' fees and costs; and
           (4)    Such further relief as this Court deems equitable and just.
13

14                              **COUNT XXI**

15          **WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT**

16     313.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

17  above as if fully set forth herein.

18     314.    This is a *qui tam* action brought by Relator on behalf of the State of Wisconsin to

19  recover treble damages and civil penalties under the Wisconsin False Claims for Medical Assistance

20  Law, Wis. Stat. § 20.931 *et seq.*

21     315.    Wis. Stat. § 20.931(2) provides liability for any person who:

22         (a)    Knowingly presents or causes to be presented to any officer,
                  employee, or agent of this state a false claim for medical
23                assistance.
           (b)    Knowingly makes, uses, or causes to be made or used a false
24                record or statement to obtain approval or payment of a false
                  claim for medical assistance.
25         (c)    conspires to defraud this State by obtaining allowance or
                  payment of claim for medical assistance, or by knowingly
26                making or using, or causing to be made or used, a false record
                  or statement to conceal, avoid, or decrease an obligation to
27                pay or transmit money or property to the Medical Assistance
                  Program;
28         (g)    knowingly makes, uses or causes to be made or used a false
                  record or statement to conceal, avoid, or decrease any

                                    61
                    **FALSE CLAIMS ACT COMPLAINT**

1

> obligation to pay or transmit money or property to the
> Medical Assistance Program.

2

3    316.    In addition, Wis. Stat. § 49.49(2) of the Wisconsin Public Assistance Code prohibits

4    the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or

5    indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which

6    payment may be made in whole or in part under the Wisconsin Medicaid program.

7    317.    Defendant violated Wis. Stat. § 49.49(2) by engaging in the conduct described herein.

8    318.    Defendant furthermore violated Wis. Stat. § 20.931 *et seq.* and knowingly caused

9    false claims to be made, used and presented to the State of Wisconsin by its deliberate and systematic

10   violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and the

11   Wisconsin Public Assistance Code and Kickback statute, and by virtue of the fact that none of the

12   claims submitted in connection with its conduct were even eligible for reimbursement by the

13   government-funded healthcare programs.

14   319.    The State of Wisconsin, by and through the Wisconsin Medicaid program and other

15   state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

16   healthcare providers and third party payers in connection therewith.

17   320.    Compliance with applicable Medicare, Medicaid and the various other federal and

18   state laws cited herein was an implied, and upon information and belief, also an express condition

19   of payment of claims submitted to the State of Wisconsin in connection with Defendant's conduct.

20   Compliance with applicable Wisconsin statutes, regulations and Pharmacy Manuals was also an

21   express condition of payment of claims submitted to the State of Wisconsin.

22   321.    Had the State of Wisconsin known that false representations were made to both the

23   FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

24   it would not have paid the claims submitted by healthcare providers and third party payers in

25   connection with that conduct.

26   322.    As a result of Defendant's violation of Wis. Stat. § 20.931 *et seq.* , the State of

27   Wisconsin has been damaged in an amount far in excess of millions of dollars exclusive of interest.

     323.    Relator is a private citizen with direct and independent knowledge of the allegations

28   of this Complaint, who has brought this action pursuant to Wis. Stat. § 20.931 *et seq.* on behalf of

1    herself and the State of Wisconsin.

2         324.    This Court is requested to accept pendant jurisdiction of this related state claim as it

3    is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

4    the State of Wisconsin in the operation of its Medicaid program.

5         WHEREFORE, Relator respectfully requests this Court to award the following damages to

6    the following parties and against Defendant:

7         To the State of Wisconsin:

8

9         (1)    Three times the amount of actual damages which the State of Wisconsin has

10               sustained as a result of Defendant's conduct;

11        (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each

12               false claim which Defendant caused to be presented to the State of

13               Wisconsin;

14        (3)    Prejudgment interest; and

15        (4)    All costs incurred in bringing this action.

16

17    To Relator:

18        (1)    The maximum amount allowed pursuant to Wis. Stat. § 20.931 and/or any

19               other applicable provision of law;

20        (2)    Reimbursement for reasonable expenses which Relator incurred in

21               connection with this action;

22        (3)    An award of reasonable attorneys' fees and costs; and

23        (4)    Such further relief as this Court deems equitable and just.

24                                    ## COUNT XXII

25                         ## MASSACHUSETTS FALSE CLAIMS ACT

26

27    325.    Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

28    above as if fully set forth herein.

      326.    This is a *qui tam* action brought by Relator on behalf of the Commonwealth of

**FALSE CLAIMS ACT COMPLAINT**

1   Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen.

2   Laws Chap. 12 § 5(A) *et seq.*

3       327.   Mass. Gen. Laws Chap. 12 § 5B provides liability for any person who-

4           (1)   knowingly presents, or causes to be presented, a false or
               fraudulent claim for payment or approval;
5           (2)   knowingly makes, uses, or causes to be made or used, a false
               record or statement to obtain payment or approval of a claim by the
6           commonwealth or ...
            (3)   conspires to defraud the commonwealth or any political
7           subdivision thereof through the allowance or payment of a fraudulent
            claim;
8           (9)   is a beneficiary of an inadvertent submission of a false claim
               to the commonwealth or political subdivision thereof, subsequently
9           discovers the falsity of the claim, and fails to disclose the false claim
               to the commonwealth or political subdivision within a reasonable
10          time after discovery of the false claim shall be liable to the
               commonwealth or political subdivision.
11

12      328.   In addition, Mass. Gen. Laws Chap. 118E § 41 prohibits the solicitation, receipt or

13  offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly,

14  in cash or in kind in return for furnishing any good, service or item for which payment may be made

15  in whole or in part under the Massachusetts Medicaid program.

16      329.   Defendant violated Mass. Gen. Laws Chap. 118E § 41  by engaging in the conduct

17  described herein.

18      330.   Defendant furthermore violated Mass. Gen. Laws  Chap. 12 § 5B and knowingly

19  caused  false claims to be made, used and presented to the Commonwealth of Massachusetts  by its

20  deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

21  Kickback Act, Mass. Gen. Law Chap. 118E § 41 and by virtue of the fact that none of the claims

22  submitted in connection with its conduct were even eligible for reimbursement by the government-

23  funded healthcare programs.

24      331.   The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid

25  program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims

26  submitted by healthcare providers and third party payers in connection therewith.

27      332.   Compliance with applicable Medicare, Medicaid and the various other federal and

28  state laws cited herein was an implied, and upon information and belief: also an express condition

1  of payment of claims submitted to the Commonwealth of Massachusetts in connection with
2  Defendant's conduct. Compliance with applicable Massachusetts statutes, regulations and Pharmacy
3  Manuals was also an express condition of payment of claims submitted to the Commonwealth of
4  Massachusetts.

5      333.    Had the Commonwealth of Massachusetts known that false representations were
6  made to both the FDA and to practitioners about the true state of affairs regarding the safety and
7  efficacy of Cymbalta, it would not have paid the claims submitted by healthcare providers and third
8  party payers in connection with that conduct.

9      334.    As a result of Defendant's violation of Mass. Gen. Laws Chap. 12 § 5B, the
10  Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars
11  exclusive of interest.

12     335.    Relator is a private citizen with direct and independent knowledge of the allegations
13  of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Chap. 12 § 5(c)(2) on
14  behalf of themselves and the Commonwealth of Massachusetts.

15     336.    This Court is requested to accept pendant jurisdiction of this related state claim as it
16  is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to
17  the Commonwealth of Massachusetts in the operation of its Medicaid program.

18     WHEREFORE, Relator respectfully requests this Court to award the following damages to
19  the following parties and against Defendant:

20     To the Commonwealth of Massachusetts:

21         (1)    Three times the amount of actual damages which the Commonwealth of
                  Massachusetts has sustained as a result of Defendant's conduct;
22         (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
                  false claim which Defendant caused to be presented to the Commonwealth
23                of Massachusetts;
           (3)    Prejudgment interest; and
24         (4)    All costs incurred in bringing this action.

25     To Relator:

26         (1)    The maximum amount allowed pursuant to Mass. Gen. Laws Chap. 12, §5F
                  and/or any other applicable provision of law;
27         (2)    Reimbursement for reasonable expenses which Relator incurred in
                  connection with this action;
28         (3)    An award of reasonable attorneys' fees and costs; and
           (4)    Such further relief as this Court deems equitable and just.

FALSE CLAIMS ACT COMPLAINT

1   **COUNT XXIII**

2   **VIRGINIA FRAUD AGAINST TAXPAYERS ACT**

3   337.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

4   above as if fully set forth herein.

5   338.   This is a *qui tam* action brought by Relator on behalf of the Commonwealth of

6   Virginia for treble damages and penalties under Va. Code Ann. § 8.01-216.3a provides liability for

7   any person who:

8       1. Knowingly presents, or causes to be presented, to an officer or
9       employee of the Commonwealth a false or fraudulent claim for
    payment or approval;
    2. Knowingly makes, uses, or causes to be made or used, a false
10       record or statement to get a false or fraudulent claim paid or approved
    by the Commonwealth;
11       3. Conspires to defraud the Commonwealth by getting a false or
    fraudulent claim allowed or paid;

12

13   339.   In addition, Va. Code Ann. § 32.1-315 prohibits the solicitation, receipt or offering

14   of any remuneration, including any bribe or rebate, directly or indirectly, overtly or covertly, in cash

15   or in kind in return for furnishing any good, service or item for which payment may be made in

16   whole or in part under the Virginia Medicaid program.

17   340.   Defendant violated Va. Code Ann. § 32.1-315 by engaging in the conduct described

18   herein.

19   341.   Defendant furthermore violated Va. Code Ann. § §8.01-216.3a and knowingly

20   caused false claims to be made, used and presented to the Commonwealth of Virginia by its

21   deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

22   Kickback Act, VA Code ANN § 32.1-315 and by virtue of the fact that none of the claims submitted

23   in connection with its conduct were even eligible for reimbursement by the government-funded

24   healthcare programs.

25   342.   The Commonwealth of Virginia, by and through the Virginia Medicaid program and

26   other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

27   healthcare providers and third party payers in connection therewith.

28   343.   Compliance with applicable Medicare, Medicaid and the various other federal and

1   state laws cited herein was an implied, and upon information and belief; also an express condition

2   of payment of claims submitted to the Commonwealth of Virginia in connection with Defendant's

3   conduct. Compliance with applicable Virginia statutes, regulations and Pharmacy Manuals was also

4   an express condition of payment of claims submitted to the Commonwealth of Virginia.

5         344.    Had the Commonwealth of Virginia known that false representations were made to

6   both the FDA and to practitioners about the true state of affairs regarding the safety and efficacy of

7   Cymbalta, it would not have paid the claims submitted by healthcare providers and third party payers

8   in connection with that conduct.

9         345.    As a result of Defendant's violation of Va. Code Ann. §8.01-216.3(A), the

10   Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars

11   exclusive of interest.

12        346.    Relator is a private citizen with direct and independent knowledge of the allegations

13   of this Complaint, who has brought this action pursuant to Va. Code Ann. § 8.01-216.3 on behalf

14   of themselves and the Commonwealth of Virginia.

15        347.    This Court is requested to accept pendant jurisdiction of this related state claim as it

16   is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

17   the Commonwealth of Virginia in the operation of its Medicaid program.

18        WHEREFORE, Relator respectfully requests this Court to award the following damages to

19   the following parties and against Defendant:

20       To the Commonwealth of Virginia:

21           (1)    Three times the amount of actual damages which the Commonwealth of
                  Virginia has sustained as a result of Defendant's conduct;

22           (2)    A civil penalty of not less than $5,500 and not more than $11,000 for each
                  false claim which Defendant caused to be presented to the Commonwealth

23               of Virginia;

          (3)    Prejudgment interest; and

24           (4)    All costs incurred in bringing this action.

25       To Relator:

26           (1)    The maximum amount allowed pursuant to Va. Code Ann. § 32.1-315 and/or
                  any other applicable provision of law;

27           (2)    Reimbursement for reasonable expenses which Relator incurred in
                  connection with this action;

28           (3)    An award of reasonable attorneys' fees and costs; and
          (4)    Such further relief as this Court deems equitable and just.

**FALSE CLAIMS ACT COMPLAINT**

1

## COUNT XXIV

2

3

## DISTRICT OF COLUMBIA PROCUREMENT REFORM AMENDMENT ACT

4
    348.   Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 88

5
above as if fully set forth herein.

6
    349.   This is a *qui tam* action brought by Relator and the District of Columbia to recover

7
treble damages and civil penalties under the District of Columbia Procurement Reform Amendment

8
Act, D.C. Code § 2-308.13 *et seq.*

9
    350.   D.C. Code § 2-308.14(a) provides liability for any person who-

10
    (1) knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

11
    (2) knowingly makes, uses, or causes to: be made or used, a false record or statement to get a false claim paid or approved by the District;

12
    (3) conspires to defraud the District by getting a false claim allowed or paid by the District;

13
    (8) is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails

14
to disclose the false claim to the District.

15
    351.   In addition, D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to accept

16
any type of remuneration for the following:

17
    (1)   Referring a recipient to a particular provider of any item or service or for which payment may be made under the District of

18
Columbia Medicaid program, or

    (2)   Recommending the purchase, lease, or order of any good,

19
facility, service, or item for which payment may be made under the District of Columbia Medicaid Program.

20
    352.   Defendant violated D.C. Code § 4-802(c) by engaging in the illegal conduct described

21
herein.

22
    353.   Defendant furthermore violated D.C. Code § 2-308.14(a) and knowingly caused

23
thousands of false claims to be made, used and presented to the District of Columbia  by its

24
deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-

25
Kickback Act D.C. Code § 4-802(c), and by virtue of the fact that none of the claims submitted in

26
connection with its illegal conduct were even eligible for reimbursement by the government-funded

27
healthcare programs.

28
    354.   The District of Columbia, by and through the District of Columbia Medicaid program

**FALSE CLAIMS ACT COMPLAINT**

1  and other state healthcare programs, and unaware of Defendant's illegal conduct, paid the claims

2  submitted by healthcare providers and third party payers in connection therewith.

3       355.    Compliance with applicable Medicare, Medicaid and the various other federal and

4  stale laws cited herein was an implied, and upon information and belief, also an express condition

5  of payment of claims submitted to the District of Columbia in connection with Defendant's illegal

6  conduct. Compliance with applicable D.C. statutes, regulations and Pharmacy Manuals was also an

7  express condition of payment of claims submitted to the District of Columbia.

8       356.    Had the District of Columbia known that false representations were made to both the

9  FDA and to practitioners about the true state of affairs regarding the safety and efficacy of Cymbalta,

10 it would not have paid the claims submitted by healthcare providers and third party payers in

11 connection with that conduct.

12      357.    As a result of Defendant's violation of D.C. Code § 2-308.14(a) the District of

13 Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

14      358.    Relator is a private citizen with direct and independent knowledge of the allegations

15 of this Complaint, who has brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of

16 themselves and the District of Columbia.

17      359.    This Court is requested to accept pendant jurisdiction of this related state claim as it

18 is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to

19 the District of Columbia in the operation of its Medicaid program.

20      WHEREFORE, Relator respectfully requests this Court to award the following damages to

21 the following parties and against Defendant:

22      To the District of Columbia:

23           (1)    Three times the amount of actual damages which the District of Columbia has
                    sustained as a result of Defendant's illegal conduct;

24           (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
                    false claim which Defendant caused to be presented to the District of

25                     Columbia;
          (3)    Prejudgment interest; and

26           (4)    All costs incurred in bringing this action.

27      To Relator:

28           (1)    The maximum amount allowed pursuant to D.C. Code § 2-308.15(f) and/or
                    any other applicable provision of law;

**FALSE CLAIMS ACT COMPLAINT**

1        (2)   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

2        (3)   An award of reasonable attorneys' fees and costs; and
        (4)   Such further relief as this Court deems equitable and just.

DATED: May 1, 2009.

NOLAN & AUERBACH, P.A.

By: _____
Matthew Pavone
Attorney for Plaintiff/Relator
JOHN PRIEVE

Kenneth J. Nolan, Esq.
Marcella Auerbach, Esq.

**FALSE CLAIMS ACT COMPLAINT**